Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | | |
|---|---|---|
| CENTRAL COMMUNICATIONS CREDIT UNION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| FENTON NISSAN OF LEGENDS, LLC, | ) | |
| Serve Registered Agent | ) | |
| The Corporation Company, Inc. | ) | |
| 112 SW 7th Street, Suite 3C | ) | |
| Topeka, Kansas 66603, | ) ) | |
| FENTON MOTORS GROUP, INC., | ) | |
| Serve Register Agent | ) | |
| John D. Robertson | ) | |
| Hartzog Conger Cason & Neville | ) | |
| 201 Robert S. Kerr Avenue, Suite 1600 | ) | |
| Oklahoma City, Oklahoma 73102, | ) ) | |
| BRAD FENTON, INDIVIDUALLY | ) | |
| Fenton Motors Group, Inc. | ) | |
| One Cowboy Way, Suite 575 | ) | |
| Frisco, Texas 75034, | ) ) | |
| CU DIRECT CORPORATION, | ) | |
| Serve Registered Agent | ) | |
| CSC-Lawyers Incorporating Service Company | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, Missouri 65101, | ) ) | |
| Defendants. | ) | |

## PETITION

COMES NOW, Plaintiff Central Communications Credit Union ("CCCU"), by and through counsel, and for its Petition against Defendants Brad Fenton, Fenton Motors Group, Inc., Fenton Nissan of Legends, LLC, and CU Direct Corporation, hereby states and alleges as follows:

**EXHIBIT A**

**Parties, Jurisdiction, and Venue**

1.      Plaintiff CCCU is a Missouri state-charted credit union in good standing, with its principle place of business in Kansas City, Missouri.

2.      Defendant Fenton Nissan of Legends, LLC ("FN-Legends") is a Kansas limited liability company and can be served through its registered agent The Corporation Company, Inc., at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603, and through its course of conduct has availed itself to the jurisdiction of this Court.

3.      Defendant Fenton Motors Group, Inc. ("FMG") is an Oklahoma Corporation which is not registered to do business in the state of Missouri, can be served through its registered agent John D. Robertson, Hartzog Conger Cason & Neville, 201 Robert S. Kerr Avenue, Suite 1600, Oklahoma City, Oklahoma 73102, and through its course of conduct has availed itself to the jurisdiction of this Court.

4.      On information and belief, Brad Fenton is an individual and citizen and resident of Texas, can be served at his place of business, FMG corporate headquarters at One Cowboy Way, Suite 575, Frisco, Texas 75034, and through his course of conduct has availed itself to the jurisdiction of this Court.

5.      On information and belief, Brad Fenton is the sole shareholder and sole director of FMG, and is the sole member of FN-Legends.

6.      On information and belief, Brad Fenton, FMG, and FN-Legends (hereinafter, the "Fenton Defendants") are alter egos of one another.

7.      Defendant CU Direct Corporation ("CUDC) is Nevada Corporation that can be served through it registered agent CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

2

8.     Defendants are subject to the jurisdiction of this Court by virtue of their actions described in this Petition, their contacts with this State which are sufficient to satisfy the requirements of R.S.Mo. § 506.500.1, their commission of torts in the State of Missouri.

9.     Venue is proper pursuant to R.S.Mo. § 508.010.

**General Allegations**

A.  **The CUDC Master Agreement**

10.     On or about October 17, 2008, Plaintiff entered into a CUDC Master Agreement with CUDC, whereby Plaintiff agreed to participate in certain CUDC programs which utilized a system for approving vehicle purchase financing called the Credit Union Direct Lending System ("CUDL System").  A copy of the CUDC Master Agreement is attached hereto as **Exhibit 1**.

11.     The CUDL System allows credit union members to receive credit union financing at the auto dealership through an automated system.

12.     Also on or about October 17, 2008, Plaintiff and CUDC executed a rider to the CUDC Master Agreement entitled, "Rider to CUDC Master Agreement – Kansas Vehicle Point-of-Purchase Program," which governed CUDC's approval of vehicle-purchase financing in the state of Kansas (the "Kansas Rider").  A copy of the Kansas Rider is attached hereto as **Exhibit 2**.

13.     The Kansas Rider is incorporated into and supplements the terms of the CUDC Master Agreement.

B.  **The Dealer Contract**

14.     On or about November 25, 2013, CUDC entered into a CU Direct Corporation Master Dealer Agreement (the "Dealer Contract") with FN-Legends, Fenton Nissan of Tiffany Springs, LLC, and Fenton Nissan of Lee's Summit, LLC (the "Dealers"), whereby each Dealer

3

agreed to certain terms governing the purchase of retail installment contracts ("RICs") by participating credit unions. A true and correct copy of the Dealer Contract is attached hereto as **Exhibit 3**.

15. Plaintiff is an express third-party beneficiary to the Dealer Contract.

16. By entering into the Dealer Contract, each Dealer made certain warranties to CUDC and the participating credit unions, including Plaintiff, concerning each piece of commercial paper assigned pursuant to the Dealer Contract, including that:

a. Dealer had the right to sell the collateral described in the RIC;

b. All information in the RIC Form is accurate and complete;

c. Dealer complied with all federal, state and local consumer protection statutes and regulations and any other applicable laws in its sale to its customer;

d. The Application Form and RIC Form have been properly signed by each applicant;

e. The vehicle identified in the RIC Form have been received by the buyer;

f. Dealer has not knowingly communicated to CCCU incorrect information relating the Application Form or knowing failed to communicate information relating to the Application Form;

g. The facts set forth in the RIC Form and/or any of the documents set forth in the Paragraph 4 of the Dealer Contract – including the Application Form, the copy of the applicant's driver's license, proof of income, proof of residence, and proof of employment – are true;

h. The signatures on the Application Form and RIC Form are genuine signatures of the buyer;

i. Dealer has examined the applicant's driver's license and verified the identity of the applicant; and

j. Dealer is not aware of any facts or circumstances that would lead Dealer to reasonably conclude that the applicant's driver's license is not a valid indication of the applicant's identity.

17. The Dealer Contract provides that if a Dealer breaches any of the warranties described therein with regard to any retail installment contract assigned pursuant to the Dealer Contract, Dealer shall, on demand, repurchase the contract from the credit union for the unpaid principal balance of the contract, together with accrued but unpaid finance and late charges.

18.     Pursuant to the Dealer Contract, consumers who wish to purchase a vehicle from Dealers are instructed by Dealers to complete an application.  Dealers then input the information in the CUDL System, via which, CUDC determines if the consumer meets the financial criteria of the credit union which participate in the CUDL System to enter into a RIC and, if so, approves the RIC and posts the RIC on the CUDL System.

19.     CUDC charges Plaintiff fees to participate in the CUDL System, including fees tied to the number of retail installment contracts purchased by Plaintiff.

**C.  The Fenton RICs**

20.     FN-Legends representatives posted the following RIC's for sale on the CUDL System on the following dates:

    a.  Michael Spencer Retail Installment Contract, dated August 15, 2018;

    b.  Ricot Laguerre Retail Installment Contract, dated June 23, 2018; and

    c.  Elise Dorvil Laguerre Retail Installment Contract, dated July 6, 2018.

(the "Fenton RICs").

21.     Plaintiff purchased the Fenton RICs from FN-Legends pursuant to the terms of the Dealer Contract and the CUDC Master Agreement.

22.     Plaintiff paid $40,166.94 for Michael Spencer Retail Installment Contract, $27,546.99 for the Ricot Laguerre Retail Installment Contract, and $27,730.04 for the Elise Dorvil Retail Installment Contract.

23.     After purchasing the Fenton RICs, CCCU discovered that FN-Legends had never made any of the loans, that the consumers/borrowers did not exist, and that FN-Legends had falsified or forged every material piece of information in the Application Form and RIC Form,

including the drivers' licenses, credit reports, and pay stubs supporting the applications and RICs.

24.    On information and belief, FN-Legends' falsification and forgery of applications, the Fenton RICs, and the documents and information supporting the applications and Fenton RICs were part of a larger, continuing scheme whereby FN-Legends and the other Fenton Defendants conspired to defraud credit unions and financial institutions by submitting false and fraudulent consumer applications to CUDC with the intent to sell the resulting fraudulent RICs to credit unions through the CUDL System (the "Fenton Fraudulent Scheme").

25.    On information and belief, CUDC had notice of the Fenton Fraudulent Scheme, the false information in the Fenton RICs, and/or other fraudulent applications and retail installment contracts submitted to CUDC by one or more of the Fenton Defendants before Plaintiff purchased one or more of the Fenton RICs.

26.    Alternatively, CUDC had a duty to investigate applications and RICs from any dealer and specifically the Fenton Dealers and to discover the Fenton Fraudulent Scheme and/or the false and fraudulent nature of the applications and retail installment contracts submitted to CUDC by one or more of the Fenton Defendants, and should have known about the Fenton Fraudulent Scheme, the false information in the Fenton RICs, and other fraudulent applications and retail installment contracts submitted to CUDC by one or more of the Fenton Defendants.

27.    Despite CUDC's knowledge and duties to credit unions such as Plaintiff, CUDC continued to allow the Fenton Entities access to the CUDL System, to post false information from the Fenton Entities on the CUDL System, and to collect fees from Plaintiff and other credit unions under the CUDC Master Agreement.

28.     CUDC did not suspend the Fenton Entities from the CUDL System until January 22, 2019.

29.     Plaintiff has satisfied all condition precedent to bringing its claims in this action.

<u>**Count I**</u>
**(Breach of Dealer Contract – FN-Legends)**

30.     Plaintiff restates, realleges, and incorporates the allegations contained in paragraphs 1-29 herein.

31.     Under the terms of the Dealer Contract, each Dealer made certain warranties to Plaintiff as a participating credit union, including those set forth in Paragraph 16, above.

32.     The Dealer Contract further provides that if any warranty contained in the Dealer Contract is breached by a Dealer, that:

> [Dealer] agrees to repurchase [the Retail Installment Contract] in cash immediately upon demand and to pay the amount owing thereon plus all costs and expenses, if any, with legal fees, for the enforcement of such repurchase . . . .

33.     FN-Legends has breached numerous warranties to Plaintiff, including each of the warranties set forth in Paragraph 16, above.

34.     FN-Legends is required under the terms of the Dealer Contract to repurchase the Fenton RICs from Plaintiff for the amount of the unpaid balance due, plus accrued interest, and to reimburse Plaintiff's costs and reasonable attorneys' fees incurred in effectuating the repurchase of the Fenton RICs.

35.     Demand has been made upon FN-Legends to repurchase the Fenton RICs pursuant to their obligations under the Dealer Contract.

36.     To date, FN-Legends has not repurchased any of the Fenton RICs from Plaintiff.

WHEREFORE, Plaintiff  prays the Court enter a judgment in its favor against Defendant Fenton Nissan of Legends, LLC for a cash payment of $95,443.97 in repurchase of the Retail

Installment Contract, plus prejudgment interest, plus all damages, costs, or expenses incurred by Plaintiff as a result of Dealers' breach, including reasonable attorneys' fees, and for such further relief as this Court deems just and proper.

<div align="center">

**Count II**
**(Fraud -- FN-Legends)**

</div>

37.     Plaintiff restates, realleges, and incorporates the allegations contained in paragraphs 1-36 herein.

38.     FN-Legends made false representations to Plaintiff with the intent to induce Plaintiff into purchasing the Fenton RICs, by falsifying drivers' licenses, credit reports, and pay stubs, creating false applications, and ultimately selling false RICs to Plaintiff.

39.     FN-Legends knew its representations were false when it made them.

40.     Plaintiff did not know FN-Legends' representations were false.

41.     Plaintiff justifiably relied on FN-Legends' false representations, and FN-Legends' false representations were material and were a substantial factor in causing Plaintiff to purchase the Fenton RICs.

42.     FN-Legends' false representations are a direct and proximate cause of Plaintiff's injury.

WHEREFORE, Plaintiff prays the Court enter a judgment in its favor against FN-Legends for such damages as are fair and reasonable, in excess of $75,000.00, together with interest thereon, attorneys' fees, costs and expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**COUNT III**
**(Conspiracy to Commit Fraud – Fenton Defendants)**

43.     Plaintiff restates, realleges, and incorporates the allegations contained in paragraphs 1-42 herein.

44.     The Fenton Defendants agreed and conspired to defraud Plaintiff through the actions described above.

45.     The Fenton Defendants had a meeting of the minds to engage in and profit from their actions set forth above in furtherance of said conspiracy.

46.     Each of the Fenton Defendants provided false information to Plaintiff, concealed information that would have put Plaintiff on notice of the Fenton Defendants' fraudulent conduct, and/or demanded and accepted fees from Plaintiff in connection with Plaintiff's purchase of the Fenton RICs and participation in the CUDL System.

47.     Plaintiff was damaged as a direct and proximate result of the Fenton Defendants' conduct.

WHEREFORE, Plaintiff prays the Court enter a judgment in its favor against FN-Legends for such damages as are fair and reasonable, in excess of $75,000.00, together with interest thereon, attorneys' fees, costs and expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**COUNT IV**
**(Fraud -- CUDC)**

48.     Plaintiff restates, realleges, and incorporates the allegations contained in paragraphs 1-47 herein.

49.     CUDC had knowledge of the Fenton Fraudulent Scheme and/or other prior fraudulent acts of one or more of the Fenton Entities before Plaintiff purchased one or more of

9

the Fenton RICs.

50.     The existence of the Fenton Fraudulent Scheme and/or other prior fraudulent acts of one or more of the Fenton Entities was a material fact.

51.     CUDC has a duty to disclose its knowledge of the Fenton Fraudulent Scheme and/or other prior fraudulent acts of one or more of the Fenton Entities to Plaintiff, but instead intentionally concealed or suppressed this fact with the intent to defraud Plaintiff and other credit unions.

52.     Plaintiff was unaware of the Fenton Fraudulent Scheme or any other prior fraudulent acts of any of the Fenton Entities, and would not have purchased the Fenton RICs if it had known about the Fenton Fraudulent Scheme or any other prior fraudulent acts of any of the Fenton Entities.

53.     As direct and proximate result of CUDC's concealment of material facts, Plaintiff suffered injury.

WHEREFORE, Plaintiff prays the Court enter a judgment in its favor against FN-Legends for such damages as are fair and reasonable, in excess of $75,000.00, together with interest thereon, attorneys' fees, costs and expenses, and punitive damages, and for such further relief as the Court deems just and proper.

**COUNT V**
**(Negligent Misrepresentation – CUDC)**

54.     Plaintiff restates, realleges, and incorporates the allegations contained in paragraphs 1-53 herein.

55.     CUDC, in the course of its business, intentionally supplied Plaintiff with the Fenton RICs and information in and related to the Fenton RICs in furtherance of CUDC's interest in financially benefiting from the sale of the Fenton RICs to Plaintiff.

56.     CUDC supplied Plaintiff with the Fenton RICs and information in and related to the Fenton RICs for the guidance of Plaintiff and with the intent that Plaintiff would believe the information to be true and rely on such information.

57.     The information supplied by CUDC to Plaintiff was false, and CUDC failed to use ordinary care in obtaining this information from FN-Legends and communicating this information to Plaintiff.

58.     CUDC's representations and provision of information were material to Plaintiff's decision to purchase the Fenton RICs, and Plaintiff justifiably relied upon the information provided by CUDC in making its decision to purchase the Fenton RICs.

59.     As a direct and proximate cause of CUDC's representation and provision of information, Plaintiff was damaged.

WHEREFORE, Plaintiff prays the Court enter a judgment in its favor against FN-Legends for such damages as are fair and reasonable, in excess of $75,000.00, together with interest thereon, attorneys' fees, costs and expenses, and punitive damages, and for such further relief as the Court deems just and proper.

Respectfully submitted,

By: /s/ Scott A. Wissel
          Thomas M. Martin, MO #38811
          Scott A. Wissel, MO #49085
          LEWIS RICE LLC
          1010 Walnut, Suite 500
          Kansas City, Missouri 64106
          Telephone: (816) 421-2500
          Facsimile: (816) 472-2500
          tmmartin@lewisrricekc.com
          sawissel@lewisricekc.com

          ATTORNEYS FOR PLAINTIFF

11

# Exhibit 1

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM



## CUDC MASTER AGREEMENT

This Agreement is entered into _October 17_, 20_08_, by and between **CU Direct Corporation,** a Nevada Corporation, with its principal place of business at 9500 Cleveland Avenue, Suite 220, Rancho Cucamonga, California, 91730-5907, hereinafter referred to as "CUDC," and _Central Communications Credit Union_, with its principal place of business at _178 11 E. US Highway 40_, _Independence_, Missouri, _64055_, hereinafter referred to as "Credit Union."

WHEREAS, CUDC is the owner of the proprietary and trade secret rights in a system called the Credit Union Direct Lending® System ("CUDL System") for approval of vehicle purchase financing for members ("Member") of Credit Union while a Member is at a participating vehicle dealer's place of business ("Dealer");

WHEREAS, CUDC is also the owner of the service mark "Credit Union Direct Lending® with design" and copyrights in various promotional materials; and

WHEREAS, Credit Union wishes to participate in certain CUDC programs utilizing the CUDL System (the "CUDC Programs").

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.  The CUDL System - CUDC hereby grants Credit Union a non-exclusive, limited license for the term of this Agreement to use the CUDL System, subject to the terms and conditions of this Agreement. CUDC also grants Credit Union the non-exclusive, limited right for the term of this Agreement to use the service mark "Credit Union Direct Lending® with design" (Credit Union Direct Lending®) in connection with the operation and promotion of the CUDL System, provided that Credit Union shall only use the licensed mark in connection with services meeting the standards established by CUDC and in accordance with requirements and restrictions contained in the CUDL Brand Style Guidelines for each CUDC Program. CUDC shall have the right, at all reasonable times and in its sole discretion, to determine if Credit Union's performance and service meets or exceeds established standards and to demand improvement in the services provided, if necessary.

2.  Confidentiality

    a.  It is expressly understood and agreed that the CUDL System constitutes the valuable proprietary and trade secret property of CUDC and its licensor. The Credit Union agrees that all information regarding the CUDL System, including the terms of this Agreement, shall be kept confidential and that no part of the CUDL System shall be disclosed to any other person or entity, except to authorized employees of Credit Union

Rev. 06-13-05
Missouri Master Agreement

Credit Union Initials: _____

during the term and in the course and scope of their employment. All CUDL System documents and other information given to Credit Union by CUDC will be returned to CUDC upon termination of this Agreement.

b. CUDC agrees to keep confidential any information from the Credit Union marked as "confidential information." Notwithstanding the foregoing, CUDC has the right to disclose Credit Union's general transaction data in CUDC's communications and publications; such disclosures will not include any data regarding specific Members or their transactions.

c. Due to Credit Union's obligation to maintain financial privacy of its Member's non-public personal information, CUDC agrees to keep all such information received from Credit Union regarding the Member confidential, and agrees not to redisclose such information or use such information for purposes other than contemplated by this Agreement, except as directed by Credit Union or Member.

d. Credit Union understands and agrees that all CUDC Vehicle Point-of-Purchase ("POP") transactions:

    i. Are provided with the consent and at the direction of the Member and, thus, are exempt from the initial notice, opt out and prohibition on sharing non-public personal information under the Gramm-Leach-Bliley Act and the National Credit Union Administration Rules and Regulations and/or the regulations of the Federal Trade Commission, as applicable; and

    ii. Require Members to voluntarily disclose non-public personal information to Dealers and CUDC.

e. CUDC maintains a security system designed to meet the Guidelines for Safeguarding Member Information, as described in Appendix A to Part 748 of the National Credit Union Administration Rules and Regulations.

f. This confidentiality agreement shall survive the termination of this Agreement.

3. <u>Program Riders; CUDC Policies</u> - The parties understand and agree that CUDC Program riders ("Riders"), which shall provide additional terms and conditions relating to Credit Union's participation in each CUDC Program, shall supplement this Agreement. The parties agree and understand that no additional consideration, other than Credit Union's participation in each such CUDC Program, is required for each Rider to be enforceable pursuant to the terms of this Agreement and each Rider. In addition, Credit Union agrees to abide by the then current Credit Union Direct Lending® Policies and Procedures Manual, the Credit Union Direct Lending® Implementation Manual, the CUDL Marketing Responsibilities Guidelines, the CUDL Brand Style Guidelines, and the other manuals issued by CUDC from time to time for each CUDC Program (the "Manuals"), which may be amended by CUDC from time to time in its sole discretion and are incorporated into each Rider by this reference.

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

4. <u>Marketing and Training</u> - Credit Union agrees that marketing and training are critical to the success of CUDC Programs in Credit Union's market. As a result, Credit Union agrees to use its best efforts to:

    a. Meet all CUDC marketing requirements identified in the CUDL Marketing Responsibilities Guidelines and the CUDL Brand Style Guidelines for each CUDC Program in which Credit Union participates;

    b. Attend CUDC sponsored training sessions; and

    c. Actively market and promote CUDL branded products, including the CUDL GAP Program and CUDC's website and vehicle buying program (cudirect.com).

5. <u>Inactive Status</u> - CUDC and Credit Union agree and understand that from time to time Credit Union may be required to withdraw from active participation in a CUDC Program. CUDC agrees to allow Credit Union to elect inactive status for any or all CUDC Programs without termination of this Agreement so long as all of the following conditions are met:

    a. Credit Union is required to elect inactive status as a result of safety and soundness concerns or as a result of federal or state regulatory actions, which Credit Union anticipates will be resolved by Credit Union within a reasonable period not to exceed twenty-four (24) months;

    b. Credit Union gives CUDC as much advance notice as is reasonably possible of Credit Union's decision to elect inactive status;

    c. To the extent reasonably possible, Credit Union agrees to work with CUDC in explaining Credit Union's decision to third party service providers; and

    d. Credit Union pays CUDC's monthly inactive status fee for each CUDC Program.

6. <u>Indemnification</u> - Each party shall defend and indemnify the other party against and hold the other party harmless from any and all claims, actions, suits, proceedings, costs, expenses, losses, damages, defenses, and liabilities, including all attorneys' fees, arising out of, connected with, relating to, or resulting from any claim, whether well-founded, baseless or otherwise, its actions or failure to take action howsoever relating to the programs outlined in each Rider executed by the Credit Union. In particular, but not by way of limitation, this agreement to indemnify specifically includes the party's participation in the CUDC Point-of-Purchase Program and the making of retail installment sales contracts, including but not limited to granting or denying a retail installment sales application, a violation of, or failure to comply properly with any consumer laws.

7.     Attorneys' Fees and Other Expenses - In the event of a breach by a party hereto of any of the warranties, obligations, or promises herein, the breaching party agrees to pay all costs and expenses of the party seeking to enforce its rights under this Agreement. Costs and expenses shall include, without limitation, all attorneys' fees and costs of litigation or arbitration, whether or not a suit is commenced or arbitration is joined, and whether such costs and expenses are incurred in an initial arbitration, in state or federal court, in bankruptcy court or upon appeal.

8.     Liability - The liability of each party with respect to this Agreement shall be limited to the aggrieved party's actual damages with the total liability not to exceed the amount equal to CUDC's total monthly compensation for the services provided under this Agreement for the immediately preceding one-year period. Further, no party to this Agreement shall be liable for any contingent, indirect, special, punitive, or consequential damages.

9.     Severability - Should any provision of this Agreement be determined to be unenforceable, invalid, or illegal, under any law, rule, or regulation, that determination shall not affect the enforceability, validity, or legality of any other provisions of this Agreement.

10.    Waivers - The failure of any party to exercise any of its rights under this Agreement shall not be deemed to be a waiver of such right or any other right available hereunder.

11.    Termination - The term of this Agreement shall be one (1) year. Upon expiration of the original term, the Agreement shall automatically renew for succeeding one (1) year terms unless either party notifies the other in writing ninety (90) days in advance of the anniversary date of this Agreement of its intent not to renew. Termination of this Agreement shall not impair or affect the obligations of either party with respect to any obligations which have been incurred hereunder prior thereto. All provisions of this Agreement relating to confidentiality, attorneys' fees, limits of liability, and indemnity shall survive termination of this Agreement. Notwithstanding the foregoing, the parties may terminate this Agreement under the following conditions, after verbal telephonic notice has been delivered to the other party with a confirming facsimile transmission to follow:

        This Agreement may be terminated immediately in the event that either party:

        a.     Fails to perform its duties under this Agreement;

        b.     Is grossly negligent in carrying out its duties under this Agreement;

        c.     Engages in any dishonest act in connection with its duties to the other Party;

     d.     Is determined to be insolvent, voluntarily files for relief from its creditors through an insolvency proceeding, is liquidated, or is placed into conservatorship; or

     e.     Ceases to do business or otherwise abandons business operations.

CUDC may also terminate this Agreement immediately in the event that Lender's performance and services fails to meet or exceed CUDC's established standards and such performance and services are not improved to CUDC's sole satisfaction within a reasonable time following demand by CUDC.

Credit Union may also terminate this Agreement in accordance with section 17 should it not agree to abide by any amendment to this Agreement, any Rider, the Manuals, or Dealer agreement with CUDC that may be proposed by CUDC from time to time.

12.    <u>Late Charges</u> - A late charge of one and one-half percent (1.5%) per month will be added on balances thirty (30) days past due.

13.    <u>Entire Agreement</u> - This Agreement and all Riders supersede all previous agreements between CUDC and Credit Union.

14.    <u>Authority</u> - The undersigned warrant that they are duly authorized to execute this Agreement on behalf of their principal.

15.    <u>Independent Contractor</u> - The parties understand that the relationship created hereby is one of independent contractor and that nothing contained herein shall be construed by the parties or by any third person to create any franchise, fiduciary, agency, partnership, joint venture, employment, or other special relationship between the parties.

16.    <u>Further Assurances</u> - Credit Union understands that each party shall do such further acts and things and execute and deliver such further documents as are reasonably necessary to carry into effect this Agreement or to better assure and confirm to the requesting party its rights, powers and remedies.

17.    <u>Amendments</u> - This Agreement, any Rider, the Manuals, or associated third party service provider agreement, such as agreements with vehicle dealers, may be amended from time to time by CUDC upon thirty (30) days prior written notice to Credit Union. Regarding any particular amendment to this Agreement, CUDC shall use its best efforts to provide Credit Union with a sixty (60) day period to comment on the proposed amendment. While CUDC will consider Credit Union's (and other participating credit union's) comments regarding an amendment, CUDC, in its sole and absolute discretion, reserves the right to modify or maintain the proposed amendment. After the effective date of CUDC's amendment, Credit Union's

Rev. 06-13-05
Missouri Master Agreement
    Page 5
    Credit Union Initials: _____

failure to terminate this Agreement prior to the effective date of such amendment (where such amendment affects the terms of this Agreement) or Credit Union's continued participation in the affected CUDC Program (where such amendment affects the terms of any CUDC Program) shall be deemed to be Credit Union's agreement to and acceptance of CUDC's amendment. Should Credit Union not agree to abide by such amendment, Credit Union may elect to terminate this Agreement or terminate Credit Union's participation in the affected CUDC Program without liability to CUDC by providing CUDC with written notice of its decision to terminate this Agreement or its participation in the CUDC Program. The termination notice must be sent within ten (10) days of receipt of the amendment; termination shall occur not more than sixty (60) days after delivery of notice of termination. Such notice must be sent by facsimile to CUDC, attention President & CEO; the original of such notice must be sent by U.S. Mail, return receipt requested.

18. <u>Right to Audit</u> - If CUDC determines in good faith that Credit Union has circumvented payment of CUDC under any CUDC Program, CUDC may request that Credit Union present sufficient documentation to repudiate such a claim. If Credit Union fails to voluntarily provide such information, in the format and amount reasonably requested by CUDC, upon receipt of seven (7) days prior written notice, CUDC may conduct an audit of Credit Union's books and records relating to the Credit Union's operation of the affected CUDC Program(s). Such audit shall be limited to a review of those items that relate to payment of CUDC's fees pursuant to this Agreement and applicable Rider(s). Such audit shall be conducted at Credit Union's offices, during Credit Union's normal business hours. All of CUDC's costs for such audit shall be borne by CUDC, unless the results of such audit shall indicate that the Credit Union has circumvented payment of CUDC fees, in which event Credit Union shall pay CUDC's costs of such audit. In addition, Credit Union shall pay CUDC any fees owed to CUDC for payments not made pursuant to this Agreement as determined by the CUDC audit, plus a payment of ten percent (10%) of such amount to cover CUDC's other administrative costs.

19. <u>Mediation</u> - In the event of an alleged breach of this Agreement or a difference between the parties as to the interpretation of this Agreement or the amounts owed under this Agreement, and before commencing arbitration proceedings or exercising their rights to terminate, the parties agree to submit the dispute to senior management of both parties for resolution. If the matter cannot be resolved by senior management, the parties agree that within thirty (30) days after the last meeting of senior management in an attempt to resolve the dispute, the dispute shall be presented to a neutral mediator, who shall be an experienced credit union industry executive. The costs of the mediator shall be evenly shared by the parties, otherwise each party shall bear its own costs and expenses incurred for dispute resolution efforts during or before the mediation.

20. <u>Arbitration</u> - Any controversy, dispute, or claim, whether of fact or law, arising out of or related to this Agreement, which is not settled among the parties hereto or by mediation, shall be settled by arbitration before a single arbitrator in accordance with the Rules of the American

Arbitration Association ("AAA"). One arbitrator shall be selected by the parties within ten (10) days of the arbitration demand or, if no arbitrator is agreed upon, by the AAA from its Large Complex Case Panel (or an experienced arbitrator having similar credentials). Such arbitrator shall have the power to hear motions, control discovery, conduct hearings, and otherwise do all that is necessary to resolve the matter. It is expressly understood that the parties have chosen arbitration to avoid the expense, burden, delay, and publicity of a court proceeding, and the arbitrator shall handle all aspects of the matter, including discovery and any hearings, in such a way as to minimize the expense, burden, delay, and publicity of the process, while assuring a fair and just result. In particular, the parties expect that the arbitrator will limit discovery by controlling the amount of discovery that may be taken (e.g., the number of interrogatories) and by restricting the scope of discovery to only those matters clearly relevant to the dispute. The arbitrator shall apply the law governing this Agreement and shall be able to decree any and all relief of any equitable nature, including but not limited to a temporary restraining order, a temporary and/or permanent injunction, and shall also be able to award damages, but shall not have the power to award punitive damages, with or without an accounting and costs. Any judgment or award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof including the award to the aggrieved parties, their heirs, assignees, and/or designees to the full amount of remuneration plus all court/arbitration costs, attorney fees, and other charges and/or damages deemed fair by the arbitrator and permitted by this Agreement.

21. <u>Governing Law</u> - This Agreement shall be construed and interpreted in accordance with the laws of the State of Missouri.

CU DIRECT CORPORATION
"CUDC"

BY _____

NAME __Craig Montesanti__
[please print]

TITLE __Chief Financial Officer__

_Central Communications_
"Credit Union"

BY __Philip M. Weber__

NAME __Philip M. Weber__
[please print]

TITLE __President__

# Exhibit 2

MLT



Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

**CREDIT UNION - AMENDMENT TO THE
RIDER TO THE CUDC MASTER AGREEMENT
KANSAS VEHICLE POINT-OF-PURCHASE PROGRAM**

This Amendment to the Rider To CUDC Master Agreement Kansas Vehicle Point-Of-Purchase Program Agreement between CU Direct Corporation ("CUDC") and _Central Communications_ ("Credit Union"), dated _October 17, 2008_ (the "Rider"), supplements and amends the terms and conditions of the Rider. In the event of a conflict between the terms of the Rider and this Amendment, the provisions of this Amendment shall prevail. Unless otherwise indicated, all terms used in this Amendment shall be as defined in the Rider.

1.       Paragraph 2.j. of the Rider is deleted and the following inserted in its place:

   j.       Include a provision in the CU Direct Corporation Dealer Agreement - Kansas ("Dealer Agreement") attached hereto as Exhibits KS-A1 and A4 Multiple Loan Type, which are incorporated herein by this reference, which provide that Credit Union is a third-party beneficiary of the Dealer Agreement;

2.       Credit Union agrees to waive the thirty (30) day notice provision provided in paragraph 17 of the CUDC Master Agreement, dated _October 17, 2008_ by and between CUDC and Credit Union.

The above modifications and amendments to the Agreement are hereby acknowledged and agreed and shall be incorporated into the Agreement.


**CU DIRECT CORPORATION**                    _Central Communications_
              "CUDC"                                    "Credit Union"

BY _____                   BY _____

NAME   Craig Montesanti                      NAME   Philp  M.  Weber
          (Please Print)                              (Please Print)

TITLE   Chief Financial Officer              TITLE   President

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 22 of 75

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

**NOTE: In order to reduce waste, Exhibit KS-A1 has not been attached to this Amendment. It remains unchanged and is attached to the Credit Union's original Rider. The Dealer A4 Multiple Loan Type Agreement can be found on the following page.**

Kansas Credit Union Amendment
Revised 01-04-07

2

Credit Union Initials: _____

Exhibit A4 - MLT Dealer Agreement
## CU DIRECT CORPORATION DEALER AGREEMENT
### Multiple Loan Type
(Non-recourse)

This Agreement is entered into on Dcteber 17 , 20 08, by and between **CU Direct Corporation**, a Nevada Corporation, with its principal place of business at 9500 Cleveland Ave., Suite 220, Rancho Cucamonga, California, 91730-5908, hereinafter referred to as "CUDC," and _____, with its principal place of business at _____, _____, _____ _____, hereinafter referred to as "Dealer."

WHEREAS, CUDC operates a system called the Credit Union Direct Lending® System ("CUDL System") for approval of retail installment sales contracts ("RIC") for members ("Member") of participating Credit Unions ("Credit Union") and for other potential auto purchasers ("Other Purchaser"), whose RIC is sold to either a Credit Union or other financial institutions ("OFI") while a Member or Other Purchaser is at a Dealer's place of business (Credit Unions and OFI are collectively referred to herein as "Financial Institutions");

WHEREAS, CUDC is also the owner of service marks and copyrights in various promotional materials; and

WHEREAS, Dealer wishes to participate in this program to facilitate the purchase of collateral using RICs.

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Confidentiality</u> - It is expressly understood and agreed that the CUDL System constitutes the valuable proprietary and trade secret property of CUDC. Dealer agrees that all information regarding the CUDL System, including the terms of this Agreement, shall be kept confidential, and that no part of the CUDL System shall be disclosed to any other person or entity, except to authorized employees of Dealer during the term and in the course and scope of their employment. This confidentiality agreement shall survive the termination of this Agreement. All access codes, documents, and other information given to Dealer by CUDC will be returned to CUDC upon termination of this Agreement. Furthermore, information regarding RICs approved (subject to this Agreement) or rejected by Financial Institutions shall be treated as confidential and not disclosed to parties outside the course of this Agreement.

    Dealer and CUDC acknowledge that all Member or Other Purchaser information that may be disclosed to Dealer or CUDC, either by Member or Other Purchaser or through use of the CUDL System or other participation in CUDC programs, is and shall at all times be kept strictly confidential and shall not be disclosed to any third person or other entity whatsoever (other than the Financial Institution). Dealer and CUDC shall take whatever steps are necessary to ensure the continued confidentiality of Member or Other Purchaser information and shall install and maintain commercially reasonable safeguards on any computer system with access to the CUDL System to prevent unauthorized use thereof, shall monitor whomever has access to the CUDL System, and implement such additional protections, and follow such additional procedures, as CUDC may from time to time require in order to secure the confidentiality of Member or Other Purchaser information. Dealer and CUDC shall further keep confidential the status of all Member or Other Purchaser applications and shall not disclose such information to any person or entity except CUDC, the Financial Institution that has received the Member's or Other Purchaser's application, or the Member or Other Purchaser. Dealer shall not electronically transmit Member or Other Purchaser information in unencrypted form. Dealer shall immediately notify CUDC should it incur a breach of the security of its data systems or unauthorized access to the CUDL System. Dealer shall cooperate with CUDC to determine the full extent and nature of the breach and to identify persons whose information may have been subject to the breach. Dealer and CUDC agree to comply with all federal, state and local laws and regulations relating to privacy, including the Gramm-Leach-Bliley Act, and Federal Trade Commission Rules.

2. <u>Dealer Employee Termination</u> - Dealer shall provide sufficient safeguards to prevent the unauthorized use of the CUDL System, including advising all employees, agents, and representatives that the CUDL System is not to be copied or revealed to anyone other than authorized employees of Dealer. Dealer shall call CUDC to change its access password if

Rev. 11-01-06
Exhibit A4 - Multiple Loan Type
All - States

3

Credit Union Initials: _YW_

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

any employee who had such knowledge is terminated.

3. <u>Fees</u> - To cover Dealer's costs of administering this program:

a. Financial Institution shall pay Dealer RIC proceeds as described in Financial Institution Duties section of this Agreement, using the CUDC Automated Clearing House system, upon receipt of a properly completed RIC Documentation Package, as described below. Financial Institution shall pay to Dealer the amount indicated on the Financial Institution's approval sheet, or if no such amount is indicated then one percent (1%) of the total amount financed, except that in no case shall the payment be less than one hundred dollars ($100.00), for each RIC purchased. Participating OFIs pay Dealers according to each OFI's specific program guidelines.

Financial Institution shall pay Dealer at the time it disburses the RIC proceeds. Dealer agrees that CUDC is neither responsible for, nor is guarantor of, payment of these fees, except to the extent that Financial Institution successfully delivers such fees to CUDC for delivery to Dealer.

b. Pursuant to the terms of the Financial Institution's separate written agreement with Dealer and in lieu of the fees paid by Financial Institution as described in paragraph 3.a. above or pursuant to the terms of the completed and properly executed Buy Rate Amendment, any individual Financial Institution may authorize Dealers to sell RICs originated using the CUDL System to Financial Institution using alternate compensation systems known as "dealer participations," "dealer reserves," "buy rate financing," or similar terms involving "interest rate" mark ups (referred to herein as Alternate Compensation Systems").

4. <u>Dealer Duties</u> - Dealer shall have Member or Other Purchaser properly complete in its entirety the Dealer's application form or any application form prepared by a CUDC approved forms provider (the "Application Form"). Using the CUDL System, the Dealer shall then submit the Member or Other Purchaser's credit information for approval. Upon receipt of the CUDL System's Credit Application Response, Dealer shall properly complete and cause the Member or Other Purchaser and any co-buyer to execute the RIC documents using the latest revised version of Retail Installment Sales Contract (the "RIC Form") authorized for use by CUDC. By examining Member and Other Purchaser's original driver's license or state issued photo identification, Dealer shall authenticate Member's or Other Purchaser's and any co-buyer's and co-applicant's signatures to the Application Form and RIC Form. Within three (3) days after execution of the RIC Form, Dealer shall deliver to the Financial Institution:

1. The Application Form;
2. CUDC Member in Good Standing form, if applicable;
3. Original, fully completed and signed RIC Form;
4. Agreement to Furnish Insurance and/or Certificate of Insurance, whichever is required by the Financial Institution;
5. Invoice or Booksheet;
6. Notice to Co-Signor;
7. Proof of down payment;
8. Copy of applicant's and co-applicant's valid driver's license or other valid identification if a driver's license is not required to operate the collateral;
9. Copy of department of motor vehicle or other appropriate agency paperwork (i.e. documentation for transfer of ownership and other necessary documents);
10. Copy of CUDL System Credit Application Response;
11. Dealer Documentation Check Sheet;
12. Signed acknowledgment that a copy of unexecuted Spanish, Chinese, Tagalog, Vietnamese, or Korean or other foreign language translation was provided, if applicable;
13. Copy of Guaranteed Auto Protection ("GAP") policy, Mechanical Breakdown Insurance ("MBI") policy, service contracts, or any other insurance products;
14. The original "As Is – No Warranty – Warranty" sticker for all used cars; and
15. Such other documentation required by Financial Institution to be delivered by Dealer, such as proof of income, proof of residence, and proof of employment.

Rev. 11-01-06
Exhibit A4 - Multiple Loan Type
All - States

4

Credit Union Initials: _____

All documents required to be delivered by Dealer to the Financial Institution are referred to herein as the "RIC Documentation Package."

Dealer shall comply with the provisions of the Users Manual, which is provided in its initial form by CUDC and may be from time to time amended by CUDC at the sole discretion of and by CUDC.

Dealer shall actively identify Credit Union Members and Other Purchasers and facilitate their vehicle or collateral purchase transactions by using the CUDL System.

5. <u>CUDC Duties</u> - CUDC will confirm with Dealer the following information by fax or other means directed by CUDC: name of Member or Other Purchaser, name of Financial Institution, dollar amount on all approved RICs, rate/term/"loan-to-value," RIC terms, other restrictions, and decision. RICs which are not immediately approved shall be noted "Refer to Financial Institution." Dealer shall have override authority in the amount indicated on the Financial Institution's approval sheet or if no such amount is indicated then a maximum of ten percent (10%) override above the approved dollar amount, not to exceed individual Financial Institution's approved "loan-to-value" ratio; i.e., if a RIC is approved for $15,000, then the maximum override is $1,500 for a total amount financed of $16,500. The foregoing ten percent (10%) override does not apply to "Refer to Financial Institution" RICs or OFI RICs.

6. <u>Financial Institution Duties</u> - Within three (3) days of the receipt of the complete RIC Documentation Package by the Financial Institution, Financial Institution shall notify Dealer of its acceptance/rejection of the RIC. Upon acceptance of the RIC by Financial Institution, Financial Institution will immediately make available to Dealer payment in the amount of the "Amount Financed" plus fees provided in this Agreement to the Dealer. Financial Institution may reject any CUDL-approved RIC submitted to it for purchase from Dealer for the following reasons:

   a. The buyer is not a Member of Credit Union, unless Credit Union and Dealer entered into a new member solicitation agreement pursuant to paragraph 7 below or unless RIC is to be purchased by an OFI;
   b. Fraud on the Application Form or fraud on any other form incidental to a RIC transaction arising out of this Agreement;
   c. The completed RIC Form does not comply with Financial Institution's terms and conditions or the documentation is incomplete, inaccurate (compared to data entered into CUDL System), or ambiguous as to any material term; or
   d. Member is not in good standing.
      *Defined as Members who have failed to maintain the minimum required share balance at the Credit Union, are in default on any loan with the Credit Union, or have materially breached a condition of a Member account agreement.*

7. <u>New Members for Credit Unions</u> - The parties agree that the CUDL System – Point-of-Purchase ("POP") Program is designed to be used for current Members. However, Credit Union, in its sole discretion, may authorize Dealer to use the CUDL System – POP Program for prospective Members of Credit Union so long as the following terms and conditions are satisfied by Credit Union and Dealer:

   a. Credit Union and Dealer enter into a separate agreement between Credit Union and Dealer authorizing Dealer to recruit or solicit prospective members for Credit Union. It is Credit Union's duty and responsibility to educate and train Dealer regarding the Credit Union's recruitment or solicitation of prospective members policies, including, but not limited to, the proper completion of Credit Union's member agreement forms. Such agreement shall comply with all applicable laws and provide Credit Union with the duty to notify in writing Dealer of its decision to cancel such agreement;
   b. If Credit Union contracts with Dealer pursuant to this paragraph 7, Credit Union may not dispute any CUDC fees based on the claim that the particular applicant was not a Member of Credit Union; and
   c. No agreement between Credit Union and Dealer to recruit or solicit prospective members may modify or supersede this Agreement.

The foregoing is not applicable to RICs purchased by an OFI.

8. <u>CUDL System Access</u> - To access the CUDL System, Dealer will provide the computer system capability required by the CUDC Dealer's Manual.

Rev. 11-01-06
Exhibit A4 - Multiple Loan Type
All - States

5

Credit Union Initials: _____

9. <u>Vehicle Leasing</u> - Dealer will not use the CUDL System in conjunction with its own or any other vehicle leasing program without CUDC's prior written approval.

10. <u>Right of First Refusal</u> - The Dealer agrees that the Credit Union or OFI, as applicable, shall have the right of first refusal to purchase all RICs where the Dealer used the CUDL System and received a Credit Application Response approval through the CUDL System. Dealer may not represent to any third party that it has the right to sell or actually sell to any third party any approved CUDL System RICs.

11. <u>Extended Warranties</u> - Dealer may sell to Member or Other Purchaser extended manufacturer's warranties or extended warranties, guaranteed auto protection programs (also know as "GAP"), creditor life and disability insurance, and any debt cancellation type product ("After Market Products"), except when the Member or Other Purchaser specifically requests After Market Products from Financial Institution. In that case, Dealer agrees not to further attempt to sell After Market Products. If the contract with Dealer includes After Market Products, Financial Institution agrees not to further attempt to sell After Market Products to the Member or Other Purchaser. All other products may be sold at the Dealer's discretion. Financing of After Market Products is at the discretion of the Financial Institution.

12. <u>Dealer Advertising</u> - Dealer shall display CUDC's approved service mark in a conspicuous location readily seen by Members or Other Purchasers entering the Dealer's showroom. Any other forms of advertisement by the Dealer must be submitted in writing to CUDC for pre-approval. The service mark may also be displayed in newspaper print ads to indicate that the Dealer participates in the CUDL System program, provided that any such print ad shall not state the name of any Financial Institution, and it shall not state or imply that CUDC or any Financial Institution offers any particular, special or specific terms or conditions with respect to the financing of a motor vehicles or other products. Dealer shall not make any reference to Financial Institution in any advertisement or promotion without Financial Institution's prior written consent.

13. <u>Terms of Sale & Assignment of RIC</u> - Pursuant to this Agreement, Dealer agrees to sell, assign, and transfer all of Dealer's right, title, and interest in each fully executed RIC to the appropriate participating Financial Institution. The Dealer waives all demands and notice of default and repossession and disposition and consents that without notice the Financial Institution may extend time to or compromise or release any rights against the Member or Other Purchaser or any guarantors. If any of the representations or warranties of the Dealer contained in this Agreement or any of the representations or warranties of the Member or Other Purchaser contained in the RIC Form or on any other document set forth in paragraph 4 above should be untrue, the Dealer agrees to repurchase such RIC in cash immediately upon demand and to pay therefore the amount owing thereon plus all costs and expenses, if any, with legal fees, for the enforcement of such repurchase, and to indemnify, defend, and hold the Financial Institution and CUDC harmless of and from any and all losses, costs, expenses, or damages arising directly or indirectly from such untruth. Any delay in the Financial Institution's right to pursue redelivery or repossess collateral purchased pursuant to a RIC shall not affect Dealer's obligation to repurchase the RIC. If any RIC sale is rescinded by court order, Dealer shall pay the Financial Institution (and CUDC, if CUDC incurs any loss) the full amount which the Financial Institution paid to purchase the particular RIC, plus interest on such amount from the date of purchase of the RIC by Financial Institution to the date of payment of such amount by Dealer at the rate of interest set forth in the RIC, plus all out-of-pocket costs and expenses incurred by Financial Institution to obtain payments under the RIC or to perfect Financial Institution's rights under the RIC or to realize proceeds from the collateral that secures the RIC, and not reimbursed by the Member or Other Purchaser or from the proceeds realized by the Financial Institution pursuant to the RIC, less all payments received by the Financial Institution with respect to the RIC from the Member or Other Purchaser or with respect to the collateral that secures the RIC. The Dealer shall be liable even if a waiver, compromise, settlement, or valuation of the terms of the RIC releases the Member or Other Purchaser. The terms of this paragraph shall supersede terms and conditions of a sale contained in the RIC Form.

Dealer shall immediately forward to Financial Institution any payments that it may receive upon a RIC after its assignment to Financial Institution. Dealer authorizes Financial Institution to place Dealer's endorsement on any check received on a RIC that has been assigned to Financial Institution. Dealer agrees promptly to refund or rebate any unearned premium or fee upon the early termination of any credit, GAP or service contract financed in any RIC purchased by Financial Institution hereunder. If requested by Financial Institution, such refund or rebate shall be paid to Financial Institution. In the event Dealer receives any unearned payments from any third party (e.g. refunded insurance premiums) relating to a RIC previously assigned to Financial Institution, Dealer shall promptly remit such amount to Financial Institution. Any such payments shall be held in trust for the benefit of the Financial Institution and shall be at all times kept separate from

Rev. 11-01-06
Exhibit A4 - Multiple Loan Type
All - States

6

Credit Union Initials: _____

any other funds of Dealer.

14. <u>Dealer Representations and Warranties</u> - At the time of each sale of each RIC, Dealer by delivery of the RIC Documentation Package to Financial Institution represents and warrants the following to both CUDC and Financial Institution:

    a. Dealer has a right to sell the collateral described on the purchase order or RIC free and clear of all liens and encumbrances and such collateral has been transferred to the Member or Other Purchaser free and clear of any security interest, encumbrance, lien or claim of any third party, except for the lien in favor of Financial Institution created by the RIC and the assignment of the RIC by Dealer to Financial Institution, which lien shall be applied for by Dealer upon a properly prepared, executed and filed application for certificate of title notation of lien or other filing so as to reflect that Financial Institution has a first priority perfected security interest in the collateral described in the RIC, and which certificate of title notation of lien or other filing shall be issued to Financial Institution in accordance with applicable law within such time so as not to create any risk of rescission or avoidance under bankruptcy, insolvency, receivership, or other applicable law;

    b. All information on the RIC Form, specifically including but not limited to the description of the collateral, is accurate and complete;

    c. The Dealer has or shall have within twenty (20) days of Member's or Other Purchaser's taking possession of the collateral, processed and delivered all paperwork and paid all fees required by the appropriate state agency such as a department of motor vehicles will show the parties listed on the RIC Form as the Registered Owner and the Financial Institution as the Legal Owner or Lien Holder of the collateral;

    d. Dealer has complied with all local, state and federal consumer credit and consumer protection statutes and regulations promulgated thereunder, as well as all other laws, regulations, and rules pertaining to the sale of the collateral including, but limited to, the Federal Truth in Lending Act, the Fair Credit Reporting Act, the Equal Credit Opportunity Act, the Gramm-Leach Bliley Act Privacy and Safeguards provisions, the Federal Trade Commission Rule and Regulations, the Office of Foreign Asset Control Regulations and applicable state laws;

    e. The Application Form and RIC Form have been properly signed by each applicant and comply with all federal, state, and local laws, rules, regulations, and ordinances, including, but not limited to, the federal statutes enumerated in 14.d above and state sales finance acts, and usury laws;

    f. The down payment, if any, shown on the face of the RIC Form, has been received by Dealer at its place of business and has not been returned to Dealer dishonored and no part of the down payment was advanced directly or indirectly by the Dealer to the Member or Other Purchaser or co-applicant except for authorized dealer and manufacturer rebates and there is no agreement between Dealer and Member or Other Purchaser pursuant to which Dealer will reimburse such person for the down payment or will pay any installment due under the RIC;

    g. The vehicle or and other collateral identified in the RIC Form have been furnished, delivered, and accepted to the satisfaction of the Member or Other Purchaser and co-applicant and all obligations of warranty to the Member or Other Purchaser and co-applicant, either expressed or implied, have been and will continue to be fulfilled by Dealer.

    h. The full amount of the "Amount Financed" as shown on the RIC Form remains unpaid by the Member or Other Purchaser and co-applicant;

    i. The Member or Other Purchaser and co-applicant were furnished legible, completed copies of the RIC Form, any purchase order or other document they were asked to review prior to execution of the aforementioned documents.

    j. Dealer has not knowingly communicated to Financial Institution incorrect information relating to the Member's, Other Purchaser's or co-applicant's Application Form or knowingly failed to communicate information relating to the Application Form;

    k. The facts set out in the RIC Form and/or any of the other documents set forth in paragraph 4 above are true; none of such documents have been altered or modified subsequent to their execution, except for such alterations or modifications as have been acknowledged and initialed by the Dealer and the other parties thereto;

    l. The signatures on the Application Form and the RIC Form are the genuine signatures of the Member or Other Purchaser and co-applicant; the RIC does not represent a straw purchase (*i.e.*, the goods are being sold for the use and benefit of the Member's or Other Purchaser to whom they are being sold, and the payments will be remitted primarily by the Member's or Other Purchaser for the Member's or Other Purchaser's benefit);

    m. The Member or Other Purchaser and co-applicant do not have a defense, recoupment, set-off, or counterclaim to payment of the obligation evidenced by the RIC Form;

    n. No party to the Application Form or RIC Form is a minor and each has the capacity to execute the Application

Rev. 11-01-06
Exhibit A4 - Multiple Loan Type
All - States

7

Credit Union Initials: _____

Form and RIC Form and is liable thereon;

o. Dealer will comply with Dealer's obligations with respect to the RIC Form and its collateral;

p. All amounts reflected in the RIC Form will be or have been actually paid to the appropriate party;

q. Dealer has complied and shall comply with all of the provisions of the User's Manual which is provided in its initial form by CUDC and may be from time to time amended by CUDC at the sole discretion of and by CUDC;

r. The Application Form actually signed by the Member or Other Purchaser and any co-applicant authorizes the Dealer, the Financial Institution, and CUDC to receive credit reports on the Member or Other Purchaser and any co-applicant;

s. The cash price shown on the RIC is the "cash price" as defined by the federal Truth-in-Lending Act and applicable state law, and represents the price for which the Dealer, in the ordinary course of business, offers to sell similar goods and services for cash to similar customers, and further Dealer has not increased the cash price because of Dealer's sale of the RIC to Financial Institution or the terms of such sale. Dealer has made no oral or written promises, affirmations, warranties, or representations to Member or Other Purchaser, either before, during, or after the execution of the RIC, that are not contained in the RIC;

t. To the best of Dealer's knowledge, the goods described in the RIC are not to be used by Member or Other Purchaser in or for the benefit of a commercial business nor does Dealer have knowledge of any illegal use of the goods described in the RIC;

u. The RIC and the security interest or ownership interest created by the RIC and held by Dealer in the collateral described in the RIC shall be transferred to Financial Institution free and clear of any security interest, encumbrance, lien, or claim of any third party;

v. The collateral described in the RIC is not ineligible for financing pursuant to Financial Institution's published financing terms and conditions in effect at the time such RIC is offered for sale by Dealer to Financial Institution and is not, and never has been represented by a certificate of title generally known as a salvage, flood, or branded title;

w. The Dealer has obtained all licenses required by law to conduct its business as a motor vehicle or other products dealer in all locations and jurisdictions in which it conducts business, all such licenses are current, and there are no investigations pending, or to the best of Dealer's knowledge, threatened against Dealer by any regulatory body having jurisdiction over Dealer regarding such licenses;

x. Dealer has examined Member/or Other Purchaser's, and any co-buyer's or and co-applicant's original driver's licenses or state issued photo identification, and thereby verified the identity of each. Dealer represents and warrants that it is not aware of any facts or circumstance which would lead Dealer to reasonably conclude that Member or Other Purchaser's, and any co-buyer's or co-applicant's, driver's license (or other satisfactory photo identification document recognized by this state) is not a valid indication of Member's or Other Purchaser's, and any co-buyer or co-applicant's identity;

y. Dealer acknowledges that the laws of certain states permit a credit or refund for sales tax financed by RICs that go into default. Dealer agrees that all of its right, title and interest in any refunds related to RICs purchased by Financial Institution hereunder are hereby assigned, transferred and relinquished to Financial Institution. Unless prohibited by law, Dealer agrees that it has not and will not claim a credit or refund with respect to any such RICs and relinquishes to Financial Institution all right to claim such credit or refund. Dealer agrees that any such credit or refund mistakenly received by Dealer shall be remitted to Financial Institution to be applied against the Member's or Purchaser's obligations under the relevant RIC. Dealer agrees to furnish any and all documentation or information that Financial Institution may reasonably request to support any claim for such refund or credit filed by Financial Institution;

z. Dealer has not increased the purchase price or cost of financing the goods or products financed under any RIC, or taken any other adverse action against an applicant, Member or Other Purchaser because the applicant, Member or Other Purchaser is a member of a protected class, as defined by applicable law, nor has Dealer engaged in any practice that has an impermissible negative impact on members of any such protected class; Dealer has complied with all applicable state, federal and local fair lending laws and regulations applicable to the RIC and all aspects of the transaction represented by the RIC.

aa. The entire transaction occurred at Dealer's place of business, and the RIC was generated from a direct sale by Dealer and not from a third party;

bb. The collateral is insured, commencing with the date of delivery of the collateral to buyer in accordance with the Financial Institution's requirements, and the Financial Institution is named as a loss payee on such policy and Dealer has timely paid any premiums or charges to any insurance or other companies for any insurance, service contract, warranty, gap waiver or other products.

    cc. Dealer will not, without the prior written consent of Financial Institution, accept collection or payments or make payments on RICs assigned to Financial Institution, repossess or consent to the return of any property that is the subject of any such RIC or modify the terms of a RIC.

15. <u>Indemnification</u> - Dealer shall defend and indemnify Financial Institution and CUDC against and hold Financial Institution and CUDC harmless from and against all claims, actions, suits, proceedings, costs, expenses, losses, damages, defenses, and liabilities, including reasonable attorneys' fees, arising out of, connected with, relating to or resulting from any claim or contention, whether well-founded, baseless or otherwise, howsoever relating in any way to the collateral or the advertising or sale of the collateral or relating in any way to the making of the RIC, including, but not limited to, a violation of, or failure to comply properly with, any consumer laws relating to the Member's or Other Purchaser's application, the RIC Form, this Agreement, any negligent or intentional act or omission, failure to properly service the collateral , breach of warranty, or nonconformity of the goods.

16. <u>Dealer Breach</u> - In the event of a breach by Dealer of any of the warranties, obligations, or promises herein, Dealer agrees to pay all damages, costs and expenses of Financial Institution and CUDC, including all attorneys' fees.

17. <u>Severability</u> - Should any provision of this Agreement be determined to be unenforceable, invalid, or illegal, under any law, rule, or regulation, that determination shall not affect the enforceability, validity, or legality of any other provisions of this Agreement.

18. <u>Termination</u> - This Agreement may be terminated by either party immediately upon three (3) days written notice to the other party to the address set forth above or to such address as is provided to the other party, but such termination shall not impair or affect the obligations of either party with respect to any obligations which have been incurred hereunder prior thereto. CUDC may immediately terminate this Agreement for substantial abuse by Dealer of the CUDL System or a material breach by Dealer of this Agreement. All provisions of this Agreement relating to terms of sale and assignment of RICs, dealer representations and warranties, confidentiality, indemnity, attorneys' fees, and remedies provided for breach of paragraphs 14, 15 16 & 17 shall survive termination of this Agreement. CUDC reserves the right in its sole and absolute discretion to suspend Dealer from the CUDL System for any Dealer violations of the terms and conditions as set forth under this Agreement or for a breach of any Dealer representations, warranties, obligations or promises made under this Agreement.

19. <u>Default; Remedies</u> - The occurrence of any of the following shall constitute a default and breach of this Agreement:

    a. Dealer's failure to perform any obligation under this Agreement or the assignment provisions of any RIC purchased by any Financial Institution;

    b. Dealer's failure to pay any indebtedness due and owing any Financial Institution under this Agreement;

    c. Dealer ceases to do business as a going concern, dissolves, becomes insolvent, files for bankruptcy, or has a receiver appointed for any portion of Dealer's property;

    d. If any warranty, representation, or statement made or furnished to CUDC and/or any Financial Institution by or on behalf of Dealer, in connection with this Agreement or any agreement or RIC purchased by Financial Institution is false or has been breached.

In the event of any default or breach by Dealer, CUDC and/or Financial Institution may at any time thereafter, at CUDC's and/or Financial Institution's option and without limiting the Financial Institution in the exercise of any other right or remedy which any Financial Institution may have by reason of such default or breach, with or without notice or demand:

    a. Require Dealer's immediate payment of any indebtedness due any Financial Institution by Dealer; and

    b. If the default relates to a specific RIC, require Dealer to repurchase the RIC from the appropriate Financial Institution and immediately pay to such Financial Institution the amount required for such repurchase set forth in paragraph 13 of this Agreement, plus any additional costs, including attorneys' fees, incurred by that Financial Institution.

20. <u>Late Charges</u> - A late charge of one and one-half percent (1.5%) or the highest amount applicable by law per month will be added on balances thirty (30) days past due, if permitted by applicable law.

Rev. 11-01-06  
Exhibit A4 - Multiple Loan Type  
All - States

Credit Union Initials: _____

21. <u>Entire Agreement</u> - This Agreement supersedes all previous CU Direct Corporation Dealer Agreements between CUDC and Dealer with respect to the subject matter hereof.

22. <u>Further Assurances</u> - Dealer understands that each party shall do such further acts and things and execute and deliver such further documents as are reasonably necessary to carry into effect this Agreement or to better assure and confirm to the requesting party its rights, powers, and remedies.

23. <u>Waivers</u> - Any failure or delay by CUDC and/or Financial Institution to exercise any right or remedy shall not operate as a waiver of such right or remedy, and no single or partial exercise by CUDC and/or Financial Institution of any right or remedy shall preclude other or future exercise thereof or the exercise of any other right or remedy. No course of dealing between Financial Institution and Dealer shall constitute a waiver of any rights of Financial Institution.

24. <u>Authority</u> - The undersigned warrant that they are duly authorized to execute this Agreement on behalf of their principal.

25. <u>Independent Contractor</u> - The parties understand that the relationship created hereby is one of independent contractor, and that nothing contained herein shall be construed by the parties or by any third person to create any franchise, agency, partnership, joint venture, employment, or other special relationship between the parties. Dealer is not granted any express or implied right to bind Financial Institution in any manner and Dealer shall not hold itself out as an agent, partner, or affiliate of CUDC or any Financial Institution.

26. <u>Governing Law</u> - This Agreement shall be construed and interpreted in accordance with the applicable laws of the state where the dealership is located.

27. <u>Waiver of Consequential Damages -</u> Dealer hereby waives any claim against CUDC and/or Financial Institution for consequential, incidental and punitive damages arising from any act or omission of CUDC and/or Financial Institution or its affiliates relating to, or in connection with this Agreement, including without limitation, the termination of this Agreement.

28. <u>Third Party Beneficiary</u> - Each and every Financial Institution participating in the CUDL program is a third party beneficiary of this Agreement, and each and every Financial Institution may enforce the terms and provisions of this Agreement against Dealer and may pursue against Dealer any and all rights and remedies it may have at law or equity, without limitation or qualification, as if such Financial Institution were an original party to this Agreement.

29. <u>Amendments</u> - This Agreement may be amended from time to time by CUDC upon thirty (30) days prior written or electronic notice to Dealer. After the effective date of CUDC's amendment, Dealer's failure to terminate this Agreement before the effective date of such amendment shall be deemed to be Dealer's agreement to and acceptance of CUDC's amendment. Should Dealer not agree to abide by such amendment, Dealer must terminate this Agreement by providing CUDC with written notice of its decision to terminate this Agreement in accordance with the provisions of paragraph 18. Such notice must be sent by facsimile to CUDC, attention President & CEO; the original of such notice must be sent by U.S. Mail, return receipt requested.

30. <u>Notice of Claims</u> - In the event Dealer becomes aware of any actual or threatened legal proceeding or action against Dealer which could give rise to an action against CUDC or any Financial Institution, Dealer shall give prompt written notice of such action to CUDC and such Financial Institution.

31. <u>Counterparts</u> – This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

32. <u>Time of the Essence</u> – Time is of the essence of this Agreement.

33. <u>Inspection of Books and Records</u> – Upon purchase of a RIC, CUDC shall have the unconditional right, at any time, and from time to time, to inspect and examine Dealer's books, records and accounts concerning the RICs and collateral sold thereby.

34. <u>Successors and Assigns</u> – This Agreement will be binding upon and inure to the benefit of the parties to this Agreement

and their respective successors and assigns. This Agreement may not be assigned by Dealer without CUDC's prior written consent. Any purported assignment in violation of this section will be void.

35.  **Force Majeure.** If CUDC is prevented from performing its obligations under this Agreement by an act of God or public enemy, or whether that occurrence is caused by war, riot, storm, earthquake, or other natural forces, or by any other occurrence that is beyond the control of the parties to this Agreement, then it shall be excused from any further performance for whatever period of time after the occurrence is reasonably necessary to remedy the effects of that occurrence.

**CU DIRECT CORPORATION**
        "CUDC"

BY_____

NAME___Craig Montesanti_____

TITLE___Chief Financial Officer_____

DATE_____


_____
        "Dealer"

BY _____

NAME_____

TITLE_____

DATE_____

Rev. 11-01-06                          11          Credit Union Initials: _PW_____
Exhibit A4 - Multiple Loan Type
All - States

# Exhibit 3

DocuSign Envelope ID: 8DD1F085-820D-47E2-B1CD-638ADA953695

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

# CU DIRECT CORPORATION MASTER DEALER AGREEMENT

(Non-recourse)

This Agreement is entered into on ___11-25___, 20_13_, by and between **CU Direct Corporation**, a Nevada Corporation, with its principal place of business at 2855 East Guasti Road, Suite 500, Ontario, California, 91761-7697, hereinafter referred to as "CUDC," and ___Fenton Nissan of Tiffany Springs LLC___, with its principal place of business at ___9600 NW Prairie View Road___, ___Kansas City___, ___MO___, ___64153___, hereinafter referred to as "Dealer."

WHEREAS, CUDC operates a system called the Credit Union Direct Lending® System ("CUDL System") for approval of retail installment sales contracts ("RIC") for members ("Member") of participating Credit Unions ("Credit Union") and for other potential auto purchasers ("Other Purchaser"), whose RIC is sold to either a Credit Union or other financial institutions ("OFI") while a Member or Other Purchaser is at a Dealer's place of business (Credit Unions and OFI are collectively referred to herein as "Financial Institutions");

WHEREAS, CUDC is also the owner of service marks and copyrights in various promotional materials; and

WHEREAS, Dealer owns dealership offices or subsidiary companies ("Local Dealerships") in various locations in the United States and, on behalf of itself and each Local Dealership listed in the Attached Exhibit A, wishes to participate in this program to facilitate the purchase of vehicles using RICs. All references to "Dealer" herein include any and all Local Dealerships who execute and an Activation Form.

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1. <u>Confidentiality</u> - It is expressly understood and agreed that the CUDL System constitutes the valuable proprietary and trade secret property of CUDC. Dealer agrees that all information regarding the CUDL System, including the terms of this Agreement, shall be kept confidential, and that no part of the CUDL System shall be disclosed to any other person or entity, except to authorized employees of Dealer during the term and in the course and scope of their employment. This confidentiality agreement shall survive the termination of this Agreement. All access codes, documents, and other information given to Dealer by CUDC will be returned to CUDC upon termination of this Agreement. Furthermore, information regarding RICs approved (subject to this Agreement) or rejected by Financial Institutions shall be treated as confidential and not disclosed to parties outside the course of this Agreement.

   Dealer and CUDC acknowledge that all Member or Other Purchaser information that may be disclosed to Dealer or CUDC, either by Member or Other Purchaser or through use of the CUDL System or other participation in CUDC programs, is and shall at all times be kept strictly confidential and shall not be disclosed to any third person or other entity whatsoever (other than the Financial Institution). Dealer and CUDC shall take whatever steps are necessary to ensure the continued confidentiality of Member or Other Purchaser information and shall install and maintain commercially reasonable safeguards on any computer system with access to the CUDL System to prevent unauthorized use thereof, shall monitor whomever has access to the CUDL System, and implement such additional protections, and follow such additional procedures, as CUDC may from time to time require in order to secure the confidentiality of Member or Other Purchaser information. Dealer and CUDC shall further keep confidential the status of all Member or Other Purchaser applications and shall not disclose such information to any person or entity except CUDC, the Financial Institution that has received the Member's or Other Purchaser's application, or the Member or Other Purchaser. Dealer shall not electronically transmit Member or Other Purchaser information in unencrypted form. Dealer shall immediately notify CUDC should it incur a breach of the security of its data systems or unauthorized access to the CUDL System. Dealer shall cooperate with CUDC to determine the full extent and nature of the breach and to identify persons whose information may have been subject to the breach. Dealer and CUDC agree to comply with all federal, state and local laws and regulations relating to privacy, including the Gramm-Leach-Bliley Act.

2. <u>Dealer Employee Termination</u> - Dealer shall provide sufficient safeguards to prevent the unauthorized use of the CUDL System, including advising all employees, agents, and representatives that the CUDL System is not to be copied or revealed

DocuSign Envelope ID: 8DD1F085-820D-47E2-B1CD-638ADA953695

to anyone other than authorized employees of Dealer.  Dealer shall call CUDC to change its access password if any employee who had such knowledge is terminated.


3.    <u>Fees</u> - To cover Dealer's costs of administering this program:

a.    Financial Institution shall pay Dealer RIC proceeds as described in Financial Institution Duties section of this Agreement, using the CUDC Automated Clearing House system, upon receipt of a properly completed RIC Documentation Package, as described below.  Credit Unions shall pay to Dealer one percent (1%) of the total amount financed, except that in no case shall the payment be less than one hundred dollars ($100.00), for each RIC purchased.  Participating OFIs pay Dealers according to each OFI's specific program guidelines.

Financial Institution shall pay Dealer at the time it disburses the RIC proceeds.  Dealer agrees that CUDC is neither responsible for, nor is guarantor of, payment of these fees, except to the extent that Financial Institution successfully delivers such fees to CUDC for delivery to Dealer.  Dealer agrees to pay initial fee and monthly fee pursuant to the fee schedule attached hereto as Exhibit B, which is executed by each local dealership to become active.

b.    Pursuant to the terms of the Financial Institution's separate written agreement with Dealer and in lieu of the fees paid by Financial Institution as described in paragraph 3.a. above or pursuant to the terms of the completed and properly executed Buy Rate Amendment, any individual Financial Institution may authorize Dealers to sell RICs originated using the CUDL System to Financial Institution using alternate compensation systems known as "dealer participations," "dealer reserves," "buy rate financing," or similar terms involving "interest rate" mark ups (referred to herein as Alternate Compensation Systems").

4.    <u>Dealer Duties</u> - Dealer shall have Member or Other Purchaser properly complete in its entirety the Dealer's application form or any application form prepared by a CUDC approved forms provider (the "Application Form").  Using the CUDL System, the Dealer shall then submit the Member or Other Purchaser's credit information for approval.  Upon receipt of the CUDL System's Credit Application Response, Dealer shall properly complete and cause the Member or Other Purchaser and any co-buyer to execute the RIC documents using the latest revised version of Retail Installment Sales Contract (the "RIC Form") authorized for use by CUDC.  By examining Member and Other Purchaser's original driver's license or state issued photo identification, Dealer shall authenticate Member's or Other Purchaser's and any co-buyer's and co-applicant's signatures to the Application Form and RIC Form.  Within three (3) days after execution of the RIC Form, Dealer shall deliver to the Financial Institution:

1.    The Application Form;
2.    CUDC Member in Good Standing form, if applicable;
3.    Original, fully completed and signed RIC Form;
4.    Agreement to Furnish Insurance and/or Certificate of Insurance, whichever is required by the Financial Institution;
5.    Invoice or Booksheet;
6.    Notice to Co-Signor;
7.    Proof of down payment;
8.    Copy of applicant's and co-applicant's valid driver's license;
9.    Copy of Department of Motor Vehicle paperwork (i.e. documentation for transfer of ownership and other necessary documents);
10.   Copy of CUDL System Credit Application Response;
11.   Dealer Documentation Check Sheet;
12.   Signed acknowledgment that a copy of unexecuted Spanish, Chinese, Tagalog, Vietnamese, or Korean language translation was provided, if applicable;
13.   Copy of Guaranteed Auto Protection ("GAP") policy, Mechanical Breakdown Insurance ("MBI") policy, service contracts, or any other insurance products;
14.   The original "As Is – No Warranty – Warranty" sticker for all used cars; and
15.   Such other documentation required by Financial Institution to be delivered by Dealer, such as proof of income, proof of residence, and proof of employment.

All documents required to be delivered by Dealer to the Financial Institution are referred to herein as the "RIC

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

Documentation Package."

Dealer shall comply with the provisions of the Users Manual, which is provided in its initial form by CUDC and may be from time to time amended by CUDC at the sole discretion of and by CUDC.

Dealer shall actively identify Credit Union Members and Other Purchasers and facilitate their vehicle purchase transactions by using the CUDL System.

5. <u>CUDC Duties</u> - CUDC will confirm with Dealer the following information by fax or other means directed by CUDC: name of Member or Other Purchaser, name of Financial Institution, dollar amount on all approved RICs, rate/term/"loan-to-value," RIC terms, other restrictions, and decision. RICs which are not immediately approved shall be noted "Refer to Financial Institution." Dealer shall have a maximum of ten percent (10%) override above the approved dollar amount, not to exceed individual Financial Institution's approved "loan-to-value" ratio; i.e., if a RIC is approved for $15,000, then the maximum override is $1,500 for a total amount financed of $16,500. The foregoing ten percent (10%) override does not apply to "Refer to Financial Institution" RICs or OFI RICs.

6. <u>Financial Institution Duties</u> - Within three (3) days of the receipt of the complete RIC Documentation Package by the Financial Institution, Financial Institution shall notify Dealer of its acceptance/rejection of the RIC. Upon acceptance of the RIC by Financial Institution, Financial Institution will immediately make available to Dealer payment in the amount of the "Amount Financed" plus fees provided in this Agreement to the Dealer. Financial Institution may reject any CUDL-approved RIC submitted to it for purchase from Dealer for the following reasons:

    a. The buyer is not a Member of Credit Union, unless Credit Union and Dealer entered into a new member solicitation agreement pursuant to paragraph 7 below or unless RIC is to be purchased by an OFI;

    b. Fraud on the Application Form or fraud on any other form incidental to a RIC transaction arising out of this Agreement;

    c. The completed RIC Form does not comply with Financial Institution's terms and conditions or the documentation is incomplete, inaccurate (compared to data entered into CUDL System), or ambiguous as to any material term; or

    d. Member is not in good standing:
       *Defined as Members who have failed to maintain the minimum required share balance at the Credit Union, are in default on any loan with the Credit Union, or have materially breached a condition of a Member account agreement.*

7. <u>New Members for Credit Unions</u> - The parties agree that the CUDL System – Point-of-Purchase ("POP") Program is designed to be used for current Members. However, Credit Union, in its sole discretion, may authorize individual Local Dealerships to use the CUDL System – POP Program for prospective Members of Credit Union so long as the following terms and conditions are satisfied by Credit Union and Local Dealership:

    a. Credit Union and Local Dealership enter into a separate agreement between Credit Union and Local Dealership authorizing Local Dealership to recruit or solicit prospective members for Credit Union. It is Credit Union's duty and responsibility to educate and train Local Dealership regarding the Credit Union's recruitment or solicitation of prospective members' policies, including, but not limited to, the proper completion of Credit Union's member agreement forms. Such agreement shall comply with all applicable laws and provide Credit Union with the duty to notify in writing Local Dealerships of its decision to cancel such agreement;

    b. If Credit Union contracts with Local Dealerships pursuant to this paragraph 7, Credit Union may not dispute any CUDC fees based on the claim that the particular applicant was not a Member of Credit Union; and

    c. No agreement between Credit Union and Local Dealerships to recruit or solicit prospective members may modify or supersede this Agreement.

The foregoing is not applicable to RICs purchased by an OFI.

8. <u>CUDL System Access</u> - To access the CUDL System, Dealer will provide the computer system capability required by the CUDC Dealer's Manual.

9. <u>Vehicle Leasing</u> - Dealer will not use the CUDL System in conjunction with its own or any other vehicle leasing program without CUDC's prior written approval.

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

10. <u>Right of First Refusal</u> - The Dealer agrees that the Credit Union or OFI, as applicable, shall have the right of first refusal to purchase all RICs where the Dealer used the CUDL System and received a Credit Application Response approval through the CUDL System. Dealer may not represent to any third party that it has the right to sell or actually sell to any third party any approved CUDL System RICs.

11. <u>Extended Warranties</u> - Dealer may sell to Member or Other Purchaser extended manufacturer's warranties or extended warranties, guaranteed auto protection programs (also know as "GAP"), creditor life and disability insurance, and any debt cancellation type product ("After Market Products"), except when the Member or Other Purchaser specifically requests After Market Products from Financial Institution. In that case, Dealer agrees not to further attempt to sell After Market Products. If the contract with Dealer includes After Market Products, Financial Institution agrees not to further attempt to sell After Market Products to the Member or Other Purchaser. All other products may be sold at the Dealer's discretion. Financing of After Market Products is at the discretion of the Financial Institution.

12. <u>Dealer Advertising</u> - Dealer shall display CUDC's approved service mark in a conspicuous location readily seen by Members or Other Purchasers entering the Dealer's showroom. Any other forms of advertisement by the Dealer must be submitted in writing to CUDC for pre-approval. The service mark may also be displayed in newspaper print ads to indicate that the Dealer participates in the CUDL System program, provided that any such print ad shall not state the name of any Financial Institution, and it shall not state or imply that CUDC or any Financial Institution offers any particular, special or specific terms or conditions with respect to the financing of a motor vehicle. Dealer shall not make any reference to Financial Institution in any advertisement or promotion without Financial Institution's prior written consent.

13. <u>Terms of Sale & Assignment of RIC</u> - Pursuant to this Agreement, Dealer agrees to sell, assign, and transfer all of Dealer's right, title, and interest in each fully executed RIC to the appropriate participating Financial Institution. The Dealer waives all demands and notice of default and repossession and disposition and consents that without notice the Financial Institution may extend time to or compound or release any rights against the Member or Other Purchaser or any guarantors. If any of the representations or warranties of the Dealer contained in this Agreement or any of the representations or warranties of the Member or Other Purchaser contained in the RIC Form or on any other document set forth in paragraph 4 above should be untrue, the Dealer agrees to repurchase such RIC in cash immediately upon demand and to pay therefore the amount owing thereon plus all costs and expenses, if any, with legal fees, for the enforcement of such repurchase, and to indemnify, defend, and hold the Financial Institution and CUDC harmless of and from any and all losses, costs, expenses, or damages arising directly or indirectly from such untruth. Any delay in the Financial Institution's right to pursue redelivery or repossess a vehicle purchased pursuant to a RIC shall not affect Dealer's obligation to repurchase the RIC. If any RIC sale is rescinded by court order, Dealer shall pay the Financial Institution (and CUDC, if CUDC incurs any loss) the full amount which the Financial Institution paid to purchase the particular RIC, plus interest on such amount from the date of purchase of the RIC by Financial Institution to the date of payment of such amount by Dealer at the rate of interest set forth in the RIC, plus all out-of-pocket costs and expenses incurred by Financial Institution to obtain payments under the RIC or to perfect Financial Institution's rights under the RIC or to realize proceeds from the collateral that secures the RIC, and not reimbursed by the Member or Other Purchaser or from the proceeds realized by the Financial Institution pursuant to the RIC, less all payments received by the Financial Institution with respect to the RIC from the Member or Other Purchaser or with respect to the collateral that secures the RIC. The Dealer shall be liable even if a waiver, compromise, settlement, or valuation of the terms of the RIC releases the Member or Other Purchaser. The terms of this paragraph shall supersede terms and conditions of a sale contained in the RIC Form.

Dealer shall immediately forward to Financial Institution any payments that it may receive upon a RIC after its assignment to Financial Institution. Dealer authorizes Financial Institution to place Dealer's endorsement on any check received on a RIC that has been assigned to Financial Institution. Dealer agrees promptly to refund or rebate any unearned premium or fee upon the early termination of any credit, GAP or service contract financed in any RIC purchased by Financial Institution hereunder. If requested by Financial Institution, such refund or rebate shall be paid to Financial Institution. In the event Dealer receives any unearned payments from any third party (e.g. refunded insurance premiums) relating to a RIC previously assigned to Financial Institution, Dealer shall promptly remit such amount to Financial Institution. Any such payments shall be held in trust for the benefit of the Financial Institution and shall be at all times kept separate from any other funds of Dealer.

14. <u>Dealer Representations and Warranties</u> - At the time of each sale of each RIC, Dealer by delivery of the RIC Documentation Package to Financial Institution represents and warrants the following to both CUDC and Financial

DocuSign Envelope ID: 8DD1F085-820D-47E2-B1CD-638ADA953695

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

Institution:

a. Dealer has a right to sell the collateral described on the purchase order or RIC free and clear of all liens and encumbrances and such collateral has been transferred to the Member or Other Purchaser free and clear of any security interest, encumbrance, lien or claim of any third party, except for the lien in favor of Financial Institution created by the RIC and the assignment of the RIC by Dealer to Financial Institution, which lien shall be applied for by Dealer upon a properly prepared, executed and filed application for certificate of title or notation of lien so as to reflect that Financial Institution has a first priority perfected security interest in the collateral described in the RIC, and which certificate of title or notation of lien shall be issued to Financial Institution in accordance with applicable law within such time so as not to create any risk of recession or avoidance under bankruptcy, insolvency, receivership, or other applicable law;

b. All information on the RIC Form, specifically including but not limited to the description of the collateral, is accurate and complete;

c. The Dealer has or shall have within twenty (20) days of Member's or Other Purchaser's taking possession of vehicle, processed and delivered all paperwork and paid all fees required by Department of Motor Vehicles and Public Safety and will show the parties listed on the RIC Form as the Registered Owner and the Financial Institution as the Legal Owner or Lien Holder of the vehicle;

d. Dealer has complied with all local, state and federal consumer credit and consumer protection statutes and regulations promulgated thereunder, as well as all other laws, regulations, and rules pertaining to the sale of the vehicle;

e. The Application Form and RIC Form have been properly signed by each applicant and comply with all federal, state, and local laws, rules, regulations, and ordinances, including, but not limited to, the Fair Credit Reporting Act, the federal Truth-in-Lending Act, the Equal Credit Opportunity Act, the Federal Trade Commission Act, state sales finance acts, and usury laws;

f. The down payment, if any, shown on the face of the RIC Form, has been received by Dealer at its place of business and has not been returned to Dealer dishonored and no part of the down payment was advanced directly or indirectly by the Dealer to the Member or Other Purchaser or co-applicant except for authorized dealer and manufacturer rebates and there is no agreement between Dealer and Member or Other Purchaser pursuant to which Dealer will reimburse such person for the down payment or will pay any installment due under the RIC;

g. The vehicle and other goods identified in the RIC Form have been furnished, delivered, and accepted to the satisfaction of the Member or Other Purchaser and co-applicant and all obligations of warranty to the Member or Other Purchaser and co-applicant, either expressed or implied, have been and will continue to be fulfilled by Dealer.

h. The full amount of the "Amount Financed" as shown on the RIC Form remains unpaid by the Member or Other Purchaser and co-applicant;

i. The Member or Other Purchaser and co-applicant were furnished legible, completed copies of the RIC Form, any purchase order or other document they were asked to review prior to execution of the aforementioned documents.

j. Dealer has not knowingly communicated to Financial Institution incorrect information relating to the Member's, Other Purchaser's or co-applicant's Application Form or knowingly failed to communicate information relating to the Application Form;

k. The facts set out in the RIC Form and/or any of the other documents set forth in paragraph 4 above are true; none of such documents have been altered or modified subsequent to their execution, except for such alterations or modifications as have been acknowledged and initialed by the Dealer and the other parties thereto;

l. The signatures on the Application Form and the RIC Form are the genuine signatures of the Member or Other Purchaser and co-applicant; the RIC does not represent a straw purchase (*i.e.*, the goods are being sold for the use and benefit of the Member's or Other Purchaser to whom they are being sold, and the payments will be remitted primarily by the Member's or Other Purchaser for the Member's or Other Purchaser's benefit);

m. The Member or Other Purchaser and co-applicant do not have a defense, recoupment, set-off, or counterclaim to payment of the obligation evidenced by the RIC Form;

n. No party to the Application Form or RIC Form is a minor and each has the capacity to execute the Application Form and RIC Form and is liable thereon;

o. Dealer will comply with Dealer's obligations with respect to the RIC Form and its collateral;

p. All amounts reflected in the RIC Form will be or have been actually paid to the appropriate party;

q. Dealer has complied and shall comply with all of the provisions of the User's Manual which is provided in its initial form by CUDC and may be from time to time amended by CUDC at the sole discretion of and by CUDC;

r. The Application Form actually signed by the Member or Other Purchaser and any co-applicant authorizes the

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

Dealer, the Financial Institution, and CUDC to receive credit reports on the Member or Other Purchaser and any co-applicant;

s. The cash price shown on the RIC is the "cash price" as defined by the federal Truth-in-Lending Act and applicable state law, and represents the price for which the Dealer, in the ordinary course of business, offers to sell similar goods and services for cash to similar customers, and further Dealer has not increased the cash price because of Dealer's sale of the RIC to Financial Institution or the terms of such sale. Dealer has made no oral or written promises, affirmations, warranties, or representations to Member or Other Purchaser, either before, during, or after the execution of the RIC, that are not contained in the RIC;

t. To the best of Dealer's knowledge, the goods described in the RIC are not to be used by Member or Other Purchaser in or for the benefit of a commercial business nor does Dealer have knowledge of any illegal use of the goods described in the RIC;

u. The RIC and the security interest or ownership interest created by the RIC and held by Dealer in the collateral described in the RIC shall be transferred to Financial Institution free and clear of any security interest, encumbrance, lien, or claim of any third party;

v. The collateral described in the RIC is not ineligible for financing pursuant to Financial Institution's published financing terms and conditions in effect at the time such RIC is offered for sale by Dealer to Financial Institution and is not, and never has been represented by a certificate of title generally known as a salvage, flood, or branded title;

w. The Dealer has obtained all licenses required by law to conduct its business as a motor vehicle dealer in all locations and jurisdictions in which it conducts business, all such licenses are current, and there are no investigations pending, or to the best of Dealer's knowledge, threatened against Dealer by any regulatory body having jurisdiction over Dealer regarding such licenses;

x. Dealer has examined Member/or Other Purchaser's, and any co-buyer's or and co-applicant's driver's original licenses or state issued photo identification, and thereby verified the identity of each. Dealer represents and warrants that it is not aware of any facts or circumstance which would lead Dealer to reasonably conclude that Member or Other Purchaser's, and any co-buyer's or co-applicant's, driver's license (or other satisfactory photo identification document recognized by this state) is not a valid indication of Member's or Other Purchaser's, and any co-buyer or co-applicant's identity;

y. Dealer acknowledges that the laws of certain states permit a credit or refund for sales tax financed by RICs that go into default. Dealer agrees that all of its right, title and interest in any refunds related to RICs purchased by Financial Institution hereunder are hereby assigned, transferred and relinquished to Financial Institution. Unless prohibited by law, Dealer agrees that it has not and will not claim a credit or refund with respect to any such RICs and relinquishes to Financial Institution all right to claim such credit or refund. Dealer agrees that any such credit or refund mistakenly received by Dealer shall be remitted to Financial Institution to be applied against the Member's or Purchaser's obligations under the relevant RIC. Dealer agrees to furnish any and all documentation or information that Financial Institution may reasonably request to support any claim for such refund or credit filed by Financial Institution;

z. Dealer has not increased the purchase price or cost of financing the goods or products financed under any RIC, or taken any other adverse action against an applicant, Member or Other Purchaser because the applicant, Member or Other Purchaser is a member of a protected class, as defined by applicable law, nor has Dealer engaged in any practice that has an impermissible negative impact on members of any such protected class; Dealer has complied with all applicable state, federal and local fair lending laws and regulations applicable to the RIC and all aspects of the transaction represented by the RIC.

aa. The entire transaction occurred at Dealer's place of business, and the RIC was generated from a direct sale by Dealer and not from a third party;

bb. The vehicle is insured, commencing with the date of delivery of the vehicle to buyer in accordance with the Financial Institution's requirements, and the Financial Institution is named as a loss payee on such policy and Dealer has timely paid any premiums or charges to any insurance or any other companies for any insurance, service contract, warranty, gap waiver or other products.

cc. Dealer will not, without the prior written consent of Financial Institution, accept collection or payments or make payments on RICs assigned to Financial Institution, repossess or consent to the return of any property that is the subject of any such RIC or modify the terms of a RIC.

15. <u>Indemnification</u> - Dealer shall defend and indemnify Financial Institution and CUDC against and hold Financial Institution and CUDC harmless from and against all claims, actions, suits, proceedings, costs, expenses, losses, damages, defenses, and liabilities, including reasonable attorneys' fees, arising out of, connected with, relating to or resulting from any claim or

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

contention, whether well-founded, baseless or otherwise, howsoever relating in any way to the vehicle or the advertising or sale of the vehicle or relating in any way to the making of the RIC, including, but not limited to, a violation of, or failure to comply properly with, any consumer laws relating to the Member's or Other Purchaser's application, the RIC Form, this Agreement, any negligent or intentional act or omission, failure to properly service the vehicle, breach of warranty, or nonconformity of the goods.

16. <u>Dealer Breach</u> - In the event of a breach by Dealer of any of the warranties, obligations, or promises herein, Dealer agrees to pay all damages, costs and expenses of Financial Institution and CUDC, including all attorneys' fees.

17. <u>Severability</u> - Should any provision of this Agreement be determined to be unenforceable, invalid, or illegal, under any law, rule, or regulation, that determination shall not affect the enforceability, validity, or legality of any other provisions of this Agreement.

18. <u>Termination</u> - This Agreement may be terminated by either party immediately upon three (3) days written notice to the other party to the address set forth above or to such address as is provided to the other party, but such termination shall not impair or affect the obligations of either party with respect to any obligations which have been incurred hereunder prior thereto. CUDC and/or Dealer may terminate individual Local Dealerships from the CUDL System. Unless expressly stated in such termination notices, a termination of a Local Dealership will not automatically terminate this Agreement. CUDC may immediately terminate this Agreement for substantial abuse by Dealer of the CUDL System or a material breach by Dealer of this Agreement. All provisions of this Agreement relating to terms of sale and assignment of RICs, dealer representations and warranties, confidentiality, indemnity, attorneys' fees, and remedies provided for breach of paragraphs 14, 15 16 & 17 shall survive termination of this Agreement. CUDC reserves the right in its sole and absolute discretion to suspend Dealer from the CUDL System for any Dealer violations of the terms and conditions as set forth under this Agreement or for a breach of any Dealer representations, warranties, obligations or promises made under this Agreement.

19. <u>Default; Remedies</u> - The occurrence of any of the following shall constitute a default and breach of this Agreement:

    a. Dealer's failure to perform any obligation under this Agreement or the assignment provisions of any RIC purchased by any Financial Institution;
    b. Dealer's failure to pay any indebtedness due and owing any Financial Institution under this Agreement;
    c. Dealer ceases to do business as a going concern, dissolves, becomes insolvent, files for bankruptcy, or has a receiver appointed for any portion of Dealer's property;
    d. If any warranty, representation, or statement made or furnished to CUDC and/or any Financial Institution by or on behalf of Dealer, in connection with this Agreement or any agreement or RIC purchased by Financial Institution is false or has been breached.

    In the event of any default or breach by Dealer, CUDC and/or Financial Institution may at any time thereafter, at CUDC's and/or Financial Institution's option and without limiting the Financial Institution in the exercise of any other right or remedy which any Financial Institution may have by reason of such default or breach, with or without notice or demand:

    a. Require Dealer's immediate payment of any indebtedness due any Financial Institution by Dealer; and
    b. If the default relates to a specific RIC, require Dealer to repurchase the RIC from the appropriate Financial Institution and immediately pay to such Financial Institution the amount required for such repurchase set forth in paragraph 13 of this Agreement, plus any additional costs, including attorneys' fees, incurred by that Financial Institution.

20. <u>Late Charges</u> - A late charge of one and one-half percent (1.5%) per month will be added on balances thirty (30) days past due.

21. <u>Entire Agreement</u> - This Agreement supersedes all previous CU Direct Corporation Dealer Agreements between CUDC and Dealer with respect to the subject matter hereof.

22. <u>Further Assurances</u> - Dealer understands that each party shall do such further acts and things and execute and deliver such further documents as are reasonably necessary to carry into effect this Agreement or to better assure and confirm to the requesting party its rights, powers, and remedies.

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

23. <u>Waivers</u> - Any failure or delay by CUDC and/or Financial Institution to exercise any right or remedy shall not operate as a waiver of such right or remedy, and no single or partial exercise by CUDC and/or Financial Institution of any right or remedy shall preclude other or future exercise thereof or the exercise of any other right or remedy. No course of dealing between Financial Institution and Dealer shall constitute a waiver of any rights of Financial Institution.

24. <u>Authority</u> - The undersigned warrant that they are duly authorized to execute this Agreement on behalf of their principal. Further, Dealer, on behalf of itself and each Local Dealership executing a Local Dealership Activation Form, warrants and represents that it has full and complete legal authority to enter into and perform its obligations under this Agreement without the approval of any other person or entity, and that upon execution this Agreement will be binding upon Dealer and each Local Dealership executing a Local Dealership Activation Form.

25. <u>Independent Contractor</u> - The parties understand that the relationship created hereby is one of independent contractor, and that nothing contained herein shall be construed by the parties or by any third person to create any franchise, agency, partnership, joint venture, employment, or other special relationship between the parties. Dealer is not granted any express or implied right to bind Financial Institution in any manner and Dealer shall not hold itself out as an agent, partner, or affiliate of CUDC or any Financial Institution.

26. <u>Governing Law</u> - This Agreement shall be construed and interpreted in accordance with the laws of the State of California.

27. <u>Waiver of Consequential Damages -</u> Dealer hereby waives any claim against CUDC and/or Financial Institution for consequential, incidental and punitive damages arising from any act or omission of CUDC and/or Financial Institution or its affiliates relating to, or in connection with this Agreement, including without limitation, the termination of this Agreement.

28. <u>Third Party Beneficiary</u> - Each and every Financial Institution participating in the CUDL program is a third party beneficiary of this Agreement, and each and every Financial Institution may enforce the terms and provisions of this Agreement against Dealer and may pursue against Dealer any and all rights and remedies it may have at law or equity, without limitation or qualification, as if such Financial Institution were an original party to this Agreement.

29. <u>Amendments</u> - This Agreement may be amended from time to time by CUDC upon thirty (30) days prior written or electronic notice to Dealer. After the effective date of CUDC's amendment, Dealer's failure to terminate this Agreement before the effective date of such amendment shall be deemed to be Dealer's agreement to and acceptance of CUDC's amendment. Should Dealer not agree to abide by such amendment, Dealer must terminate this Agreement by providing CUDC with written notice of its decision to terminate this Agreement in accordance with the provisions of paragraph 19. Such notice must be sent by facsimile to CUDC, attention President & CEO; the original of such notice must be sent by U.S. Mail, return receipt requested.

30. <u>Notice of Claims</u> – In the event Dealer becomes aware of any actual or threatened legal proceeding or action against Dealer which could give rise to an action against CUDC or any Financial Institution, Dealer shall give prompt written notice of such action to CUDC and such Financial Institution.

31. <u>Counterparts</u> – This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

32. <u>Time of the Essence</u> – Time is of the essence of this Agreement.

33. <u>Inspection of Books and Records</u> – Upon purchase of a RIC, CUDC shall have the unconditional right, at any time, and from time to time, to inspect and examine Dealer's books, records and accounts concerning the RICs and vehicles sold thereby.

34. <u>Successors and Assigns</u> – This Agreement will be binding upon and inure to the benefit of the parties to this Agreement and their respective successors and assigns. This Agreement may not be assigned by Dealer without CUDC's prior written consent. Any purported assignment in violation of this section will be void.

35. <u>Force Majeure</u> – If CUDC is prevented from performing its obligations under this Agreement by an act of God or public enemy, or whether that occurrence is caused by war, riot, storm, earthquake, or other natural forces, or by any other occurrence that is beyond the control of the parties to this Agreement, then it shall be excused from any further performance

for whatever period of time after the occurrence is reasonably necessary to remedy the effects of that occurrence.

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

**CU DIRECT CORPORATION**

"CUDC"

BY _Craig Montesanti_

NAME _Craig Montesanti_

TITLE _Chief Financial Officer_

DATE _12/19/2013_

Fenton Nissan of Tiffany Springs LLC

"Dealer"

BY _Derek Hill_

NAME _Derek Hill_

TITLE _GSM_

DATE _12/17/2013_

Rev. 01-18-06 A4
National Dealer Agreement

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

**EXHIBIT A**
**MASTER DEALER LIST**

Dealership Name                    Address

1.  _____        _____

2.  _____        _____

3.  _____        _____

4.  _____        _____

5.  _____        _____

6.  _____        _____

7.  _____        _____

8.  _____        _____

9.  _____        _____

10. _____        _____

11. _____        _____

12. _____        _____

13. _____        _____

14. _____        _____

15. _____        _____

16. _____        _____

17. _____        _____

18. _____        _____

19. _____        _____

20. _____        _____

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

## EXHIBIT B
## DEALERSHIP ACTIVATION FORM

### Credit Union Direct Lending Dealer Pricing

1)      Initial Fee -    $   395
2)      Monthly Fee - $   395

Total Due at Signing -  $   0

*Monthly Fee to begin in the month of   12   20 13 .

Fenton Nissan of Tiffany Springs LLC
_____
Dealership Name

*DocuSigned by:*
Derek Hill
_____
Dealer Authorized Signature/Title

12/17/2013
_____
Date

Derek Hill GSM
_____
Print Name/Title

Rev. 01-18-06 A4
National Dealer Agreement

DocuSign Envelope ID: 8DD1F085-820D-47E2-B1CD-638ADA953695

<u>EXHIBIT C</u>

**BUY-RATE AMENDMENT TO**
**CU DIRECT CORPORATION AGREEMENT**
Master Dealer Agreement
(Non-recourse)

This Amendment (the "Buy Rate Amendment") to the CU Direct Corporation Agreement – Master Dealer Agreement Non-recourse) between CU Direct Corporation ("CUDC") and _____ _____ - Local Dealership location: _____ ("Dealer"), (the "Agreement"), supplements and amends the terms and conditions of the Agreement. In the event of a conflict between the terms of the Agreement and this Amendment, the provisions of this Amendment shall prevail. Unless otherwise indicated, all terms used in this Amendment shall be as defined in the Agreement.

1.        _____ Credit Union ("Financial Institution") is a third party beneficiary of the Agreement. Financial Institution has authorized CUDC to enter into this Amendment in order to modify the Agreement as it relates solely to Financial Institution's relationship with Dealer. In particular, Financial Institution has agreed to compensate Dealer using Alternative Compensation Systems, as more fully described herein. This Amendment does not modify any other terms of the Agreement as it relates to (i) Dealer's contractual rights and obligations to CUDC or Financial Institution except as indicated herein, or (ii) Dealer's contractual rights or obligations to any other Financial Institution participating in the CUDL Program.

2.        The following three new subparagraphs are added to paragraph 3, titled "Fees":
c.            For each RIC sold by Dealer to Financial Institution, Financial Institution shall pay Dealer an amount equal to the amount financed under the RIC (less any upfront insurance charges), and a "Dealer Participation" amount calculated in accordance with one of the following options subject to the minimum annual percentage rate (the "Buy Rate") and the maximum annual percentage rate permitted as shown on the Financial Institution's then current rate sheet. Under either option, if the "APR" and the "Buy Rate" are equal, then the Dealer Participation shall be a fee as set forth in paragraph 4.a.

_____     <u>Option A - 100% Front End Advance (FEA)</u>
Initials

|   | Total finance charge at APR |
| --- | --- |
| Minus | <u>Total finance charge at Buy Rate</u> |
| = | Differential |

Where, "Total finance charge" and "APR" are as shown on the RIC and the Buy Rate is that Buy Rate in effect (as shown on the Financial Institution's then-current rate sheet) when the RIC is signed by the Member. Dealer will be paid a Dealer Participation equal to 100% of the Differential (as calculated above), which will be credited to the Dealer Participation Account, described below.

_____     <u>Option B - 75/25 Split Reserve Program</u>
Initials

|   | Total finance charge at APR |
| --- | --- |
| Minus | <u>Total finance charge at Buy Rate</u> |
| = | Differential |

Where, "Total finance charge" and "APR" are as shown on the RIC and the Buy Rate is that Buy Rate in effect (as shown on the Financial Institution's then-current rate sheet) when the RIC is signed by the Member. The Dealer is paid a Dealer Participation in an amount equal to 75% of the Differential

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

(as calculated above). The Financial Institution retains the remaining 25% of the Differential. Payment will be credited to the Dealer Participation Account described below.

d.      Dealer Participation Account ("Dealer Participation Account")

(i)      As soon as practicable after the Buy Rate Amendment to this Agreement is signed by the parties, Financial Institution will establish a Dealer Participation Account on its books, which shall be maintained and administered as provided in this Agreement. The Dealer Participation Account will be a non-interest bearing ledger account on Financial Institution's books in Dealer's name.  Dealer will have no ownership interest or legal rights whatsoever to the Dealer Participation Account.  The Dealer Participation Account is a mechanism for payment of Dealer's obligations under this and any other Agreement or Amendment with the Financial Institution.  The amount in the Dealer Participation Account in no way limits the amounts that can be billed or charged-back to Dealer, which amounts Dealer agrees to pay even if the Dealer Participation Account is depleted to zero.  Notwithstanding Financial Institution's right to charge the Dealer Participation Account in the foregoing manner, charge-backs will be deducted by Financial Institution from any amounts due Dealer pursuant to paragraph 2.c. above.  If amounts so due Dealer will be insufficient to offset such charge-backs or any other amounts owed the Financial Institution by Dealer, the Financial Institution will bill the difference to Dealer and Dealer will, within ten (10) days, pay that difference to Financial Institution.

(ii)      (<u>APPLICABLE TO OPTION A ONLY</u>) Dealer is required to establish and maintain a minimum Dealer Participation Account balance of $_____.  Unless the Financial Institution is already in possession of the required minimum Dealer Participation Account balance, the Dealer Participation Account will be built by Financial Institution withholding ___% of the amount due Dealer on each RIC purchased by Financial Institution.  The minimum Dealer Participation Account balance may be adjusted as Financial Institution deems appropriate in it sole and absolute discretion upon thirty (30) days' prior written notice.  Once the balance of the Dealer Participation Account reaches the minimum required level, it will not be allowed to drop below that level except as otherwise provided in this Agreement. If at any time the Dealer Participation Account balance drops below the minimum, Dealer must deposit funds with Financial Institution for credit to the Dealer Participation Account sufficient to bring the balance up to the minimum balance. Such deposit will be due within ten (10) days after Financial Institution gives written notice requiring it. Dealer hereby grants the Financial Institution a security interest and lien in any money owed Dealer by the Financial Institution.

(iii)      Once each month, on a schedule determined by Financial Institution, Financial Institution will provide Dealer with a statement reflecting the Dealer Participation Account balance and activity and will pay Dealer an amount equal to: (1) the balance in the Dealer Participation Account, less (2) the Dealer Participation Account minimum balance, less (3) any charge-backs determined in accordance with subparagraph 2.e., below, less (4) any amounts withheld to fund the Dealer Participation Account determined in accordance with paragraph 2.d.ii. above.

(iv)      Regardless of the Dealer Participation Account minimum, Financial Institution will pay to Dealer an amount equal to the remainder of the Dealer Participation Account balance to Dealer when (i) the Buy Rate Amendment applicable to Financial Institution has been terminated; and (ii) there is no longer any possibility of a charge-back under paragraph 2.e., below, or any other amounts owed to Financial Institution by Dealer pursuant to the Buy Rate Amendment to this Agreement.

e.  Charge-backs.

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

(i)  A "charge-back" is any sum of money owed by Dealer to Financial Institution under the Buy Rate Amendment to this Agreement or as a result of any RIC purchased by Financial Institution from Dealer. The charge-back period shall be determined by the Program Fees selection made in paragraph 2.c. above (the "Charge-Back Period").

      a.  If Option A 100% Front End Advance is selected, the Charge-Back Period will be for the entire term of the contract.

      b.  If Option B Split Reserve Program is selected, the Charge-Back period will be prior to Financial Institution having received four (4) payments pursuant to the terms of the RIC.

(ii)  Dealer will owe and Financial Institution, as its agent, will be entitled to recover 100 percent of the Dealer Participation amount if:

      a.  The RIC is cancelled by the Member for any reason.

      b.  If Dealer is obligated to repurchase the RIC pursuant to the terms of the Agreement

      c.  If the RIC is paid in full before one payment is made pursuant to the RIC.

(iii)  Dealer will owe and Financial Institution, as its agent, will be entitled to recover the Unearned Dealer Participation Amount, as that term is defined below, if :

      a.  In the sole and absolute discretion of the Financial Institution, the balance due on the RIC is non-collectable.

      b.  The Member defaults in any obligation due under the RIC arising from the member's bankruptcy.

      c.  Member skips(i.e.,Financial Institution is unable to locate Member and vehicle).

      d.  The vehicle is confiscated by any federal or state agency.

      e.  Due to the vehicle's value, repossession is non-feasible.

      f.  The RIC is paid in full after one payment is made pursuant to the RIC.

Notwithstanding the foregoing, if Option B is selected and if four (4) scheduled payments are paid and credited pursuant to the terms of the RIC prior to the Member's bankruptcy, Member's skip, Vehicle's confiscation, Financial Institution's determination of non-feasible repossession, or prepayment of the RIC, Financial Institution will have no right to charge-back for that RIC.

The "Unearned Dealer Participation Amount" shall be calculated as follows:  (i) Financial Institution will calculate, in accordance with the RIC, the amount of the finance charge which has actually been earned, received and applied by the Financial Institution to the earned finance charge; (ii) divide "i" by the scheduled total finance charge that was to be paid over the entire term of the RIC; (iii) multiply "ii" by the actual dollar amount of the Dealer Participation that Dealer received up front; and (iv) subtract "iii" from the actual dollar amount of the Dealer Participation that Dealer received up front.   The figure arrived at in "iv" will be the Unearned Dealer Participation Amount.

(iv)  If the balance in the Dealer Participation Account is not sufficient to pay the amount of a charge-back, Dealer shall pay the charge-back to Financial Institution within ten (10) days of written notice by Financial Institution. Financial Institution is authorized but not required to obtain payment of any and all charge-backs by charging them against the Dealer Participation Account, without specific notice to or authorization from Dealer, even if such charge creates a negative balance in such account.

3.  Dealer understands and agrees that upon written notice from Financial Institution, CUDC may terminate

Electronically Filed - Jackson - Kansas City - February 11, 2019 - 06:07 PM

this Amendment effective immediately upon fax notice to Dealer. Upon delivery of such notice to Dealer, all subsequent RIC transactions will be pursuant to the then current Agreement.

4.      This Amendment shall be effective as of the date this Amendment is signed by the Financial Institution.

The above modifications and amendments to the Agreement are hereby acknowledged and agreed and shall be incorporated into the Agreement.

CUDC:                                    Dealer:

Signed: _____        Signed: _____
By: _____        By: _____
Its: _____        Its: _____
Dated: _____        Dated: _____

The above referenced Financial Institution agrees to abide by the terms and conditions of this Amendment:

Financial Institution:

Signed: _____
By: _____
Its: _____
Dated: _____

DocuSign Envelope ID: 8DD1F085-820D-47E2-B1CD-638ADA953695

**EXHIBIT A**
**MASTER DEALER LIST**

Dealership Name                                Address

1. *Fenton Nissan of Tiffany Springs LLC*     *9600 Northwest Praine View Rd*
   *#240123*
2. _____                   *Kansas City MO 64153*

3. *Fenton Nissan of Lee's Summit LLC*         *1025 Southeast Oldham Parkway*
   *#240124*
4. _____                   *Lee's Summit, MO 64081*

5. *Fenton Nissa of Legends LLC*               *1900 N 100th Terr*
   *#340283*
6. _____                   *Kansas City MO 66109*

7. _____                   _____

8. _____                   _____

9. _____                   _____

10. _____                  _____

11. _____                  _____

12. _____                  _____

13. _____                  _____

14. _____                  _____

15. _____                  _____

16. _____                  _____

17. _____                  _____

18. _____                  _____

19. _____                  _____

20. _____                  _____

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT KANSAS CITY

CENTRAL COMMUNICATIONS CREDIT UNION

                **PLAINTIFF(S),**         **CASE NO.** 1916-CV03865

**VS.**                                   **DIVISION 13**

FENTON NISSAN OF LEGENDS, LLC ET AL

                **DEFENDANT(S),**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION
_____

      NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable CHARLES H MCKENZIE on 03-JUN-2019 in DIVISION 13 at 08:30 AM. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

      At the Case Management Conference, counsel should be prepared to address at least the following:

      a.      A trial setting;

      b.      Expert Witness Disclosure Cutoff Date;

      c.      A schedule for the orderly preparation of the case for trial;

      d.      Any issues which require input or action by the Court;

      e.      The status of settlement negotiations.

**MEDIATION**

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

**POLICIES/PROCEDURES**

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

_/S/ CHARLES H MCKENZIE_
CHARLES H MCKENZIE**, Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
SCOTT A WISSEL, LEWIS RICE & FINGERSH, 1010 WALNUT #500, KANSAS CITY, MO 64106

Defendant(s):
FENTON NISSAN OF LEGENDS, LLC
FENTON MOTORS GROUP, INC.
BRAD FENTON
CU DIRECT CORPORATION

Dated: 14-FEB-2019

MARY A. MARQUEZ
Court Administrator

Electronically Filed - Jackson - Kansas City - February 14, 2019 - 11:59 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
[x] **AT KANSAS CITY** [ ] **AT INDEPENDENCE**

CENTRAL COMMUNICATIONS CREDIT UNION,
_____
PETITIONER/PLAINTIFF,

VS.                                              CASE NO. ___1916-cv03865_____

CU DIRECT CORPORATION, ET AL.
_____
RESPONDENT/DEFENDANT.

### MOTION FOR APPROVAL AND APPOINTMENT
### OF PRIVATE PROCESS SERVER

COMES NOW Requestor in the above captioned matter and for its Motion for Approval/ Appointment of a Private Process Server, pursuant to Local Rule 4.9 of the Jackson County Circuit Court Rules, states to the Court as follows:

The Requestor requests that the following individual be approved and appointed to serve process in this case:

Legal Name _____Stephen Waters PPS19-0706; Cecil Landrum PPS190698_____

The Requestor states that:

[x] The above-named individual is qualified to serve process in this matter and that an affidavit containing the information required by Rule 4.9 and attesting to such qualifications is attached and incorporated as Exhibit "A".

[ ] The above-named individual is on the Court's List of Approved Process Servers and all of the information contained in his/her Application and Affidavit currently on file is still correct.

[ ] The above-named individual is on the Court's List of Approved Process Servers and the information contained in his/her Application and Affidavit needs to be updated as indicated in an attachment, provided by me herewith.

Lewis Rice LLC
1010 Walnut Street #500, Kansas City, MO 64106
_____/s/ Scott A. Wissel_____     Scott A. Wissel
_____
Signature of Requesting Party                    Printed Name of Requesting Party

### ORDER

It is hereby ordered that Requestor's Motion for Approval and Appointment of a Private Process server is sustained and the above-named individual is hereby approved and appointed to serve process in the above captioned matter.

_____        _____
DATE                                                    JUDGE

Revised Oct 2016

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

| | |
|---|---|
| CENTRAL COMMUNICATIONS CREDIT UNION, | ) ) |
| Plaintiff, | ) |
| v. | ) Case No. 1916-cv03865 |
| | ) |
| FENTON NISSAN OF LEGENDS, LLC, et al., | ) ) |
| Defendants. | ) |

## MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

COMES NOW Plaintiff, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| | | | | | |
|---|---|---|---|---|---|
| Jan Adams | PPS19-0001 | George L Castillo | PPS19-0037 | Bradley Gordon | PPS19-0059 |
| Michelle L Adams | PPS19-0002 | Sonja R Chailland | PPS19-0038 | Tom Gorgone | PPS19-0060 |
| Roger Adams | PPS19-0003 | Gary Chatham | PPS19-0039 | Gabriella Gourdin | PPS19-0061 |
| Bobby Ali | PPS19-0004 | Glen Cobb | PPS19-0040 | Christina M Gregory | PPS19-0062 |
| Lakeita Allen | PPS19-0005 | Kenneth V Condrey | PPS19-0041 | Charles R Gunning | PPS19-0063 |
| Sandra M Allen | PPS19-0006 | Sharon R Condrey | PPS19-0042 | Darnell Hamilton | PPS19-0076 |
| Victor Aponte | PPS19-0007 | Kathleen Cook | PPS19-0043 | Kimberly Hamilton | PPS19-0077 |
| Joshua Aragon | PPS19-0008 | William R Cooper | PPS19-0044 | Alan Hancock | PPS19-0078 |
| Brandon Aschenbrenner | PPS19-0009 | Catherine Cornellier | PPS19-0045 | Eric Hann | PPS19-0079 |
| Erica Austin | PPS19-0010 | Wilberto Correa | PPS19-0046 | Timothy S Hansen | PPS19-0080 |
| Kali A Baltazar | PPS19-0011 | Alterick S Davenport | PPS19-0047 | Christy Hartline | PPS19-0081 |
| Joseph L Baska | PPS19-0012 | Duane D Day | PPS19-0048 | Larry Haynes | PPS19-0082 |
| Carrington L Bell | PPS19-0013 | Gerald Deadwyler | PPS19-0049 | Douglas E Hays | PPS19-0083 |
| George Bell | PPS19-0014 | Robert E Delacy, III | PPS19-0050 | Grace Hazell | PPS19-0084 |
| Ryan Black | PPS19-0015 | Robert E Delacy, Jr. | PPS19-0051 | Richard P Heimerich, Jr. | PPS19-0085 |
| Shanna Blackwell | PPS19-0016 | Dominic DellaPorte | PPS19-0052 | Stephen Heitz | PPS19-0086 |
| Dianna J Blea | PPS19-0017 | Ricardo Delpratt | PPS19-0053 | Charles Helms | PPS19-0087 |
| Richard J Blea | PPS19-0018 | John Dippenworth | PPS19-0064 | Austen Hendrickson | PPS19-0088 |
| Robert Blixt | PPS19-0019 | Alexander C Djaine | PPS19-0065 | Wendy L Henrich | PPS19-0089 |
| Brent Bohnoff | PPS19-0020 | Claudia A Dohn | PPS19-0066 | Jesse J Hernandez | PPS19-0090 |
| David Braxton | PPS19-0021 | Dale Dorning | PPS19-0067 | Michael Hibler | PPS19-0091 |
| Charles Bridges | PPS19-0022 | Jadeena Earle | PPS19-0068 | Anthonio Hightower | PPS19-0092 |
| Donnie C Briley | PPS19-0023 | Abel A Emiru | PPS19-0069 | Wendy K Hilgenberg | PPS19-0238 |
| Kathy A Broom | PPS19-0024 | David S Felter | PPS19-0070 | James M Hise | PPS19-0093 |
| Dan Brouillete | PPS19-0025 | William F Ferrell | PPS19-0228 | Gary F Hodges | PPS19-0094 |
| Douglas S Brower | PPS19-0026 | Robert D Finley | PPS19-0071 | Brian K Hollen | PPS19-0095 |
| Kelley Brown | PPS19-0028 | Travis Foster | PPS19-0072 | Bob Holyk | PPS19-0096 |
| Kenneth H Brown, Jr. | PPS19-0027 | Christopher Fowler | PPS19-0073 | Roman Holyk | PPS19-0097 |
| Nicholas R Bull | PPS19-0029 | James Frago | PPS19-0074 | Ulonda G Howard | PPS19-0098 |
| Jarrett M Bullock | PPS19-0030 | John Frago | PPS19-0075 | Martin J Hueckel | PPS19-0099 |
| Ashley Bumgardner | PPS19-0031 | Andrew L Garza | PPS19-0231 | William B Humble | PPS19-0100 |
| James Burke | PPS19-0032 | Louis Gerrick | PPS19-0054 | George Illidge | PPS19-0101 |
| Randy D Burrow | PPS19-0033 | Matthew Gilmore | PPS19-0055 | Frank James | PPS19-0102 |
| Gary Burt | PPS19-0034 | Steven D Glenn | PPS19-0056 | Matthew J Jankowski | PPS19-0103 |
| William J Caputo | PPS19-0035 | Ronda Godard | PPS19-0057 | Betty A Johnson | PPS19-0104 |
| Charles Casey | PPS19-0036 | Adam Golden | PPS19-0058 | Christina M Johnson | PPS19-0105 |

| | | | | | |
|---|---|---|---|---|---|
| Edward Johnson | PPS19-0106 | Cynthia Paris | PPS19-0140 | Monica Smith | PPS19-0178 |
| Randy Johnson | PPS19-0107 | George R Perry, Jr. | PPS19-0142 | Timofey A Somoylenko | PPS19-0179 |
| Michael A Jones | PPS19-0108 | Janet R Perry | PPS19-0141 | Anthony Spada | PPS19-0180 |
| Haile Kahssa | PPS19-0109 | Kacie Phelps | PPS19-0143 | Melissa Spencer | PPS19-0181 |
| Kenneth J Kearney | PPS19-0110 | Vincent Piazza | PPS19-0158 | Jamie P Stallo | PPS19-0182 |
| Michael Keatina | PPS19-0111 | Timothy Pinney | PPS19-0159 | Marc A Starks | PPS19-0183 |
| Gerald Keeley | PPS19-0112 | Jason S Plumley | PPS19-0160 | Barbara J Stelc | PPS19-0184 |
| Wyman T Kroft | PPS19-0113 | Craig Podgurshi, Jr | PPS19-0161 | Kelvin Stinyard | PPS19-0185 |
| Jeff Kuenzi | PPS19-0114 | Rocellious D Pope | PPS19-0162 | Randy Stone | PPS19-0186 |
| Jo Ann Lane | PPS19-0115 | Anastasia Quinquit | PPS19-0163 | Haley Stratton | PPS19-0187 |
| John M Laukaitis | PPS19-0116 | Charles J Reardon | PPS19-0164 | Berham B Tassaw | PPS19-0188 |
| Joshua Lee | PPS19-0117 | Derek L Reddick | PPS19-0165 | Jeffrey Teitel | PPS19-0189 |
| Rick V Leeds | PPS19-0118 | Angela Reed | PPS19-0166 | Perry Thomas | PPS19-0190 |
| Kristie S Lewis | PPS19-0119 | Christopher Reed | PPS19-0145 | Robert H Thomas | PPS19-0191 |
| John D Lichtenegger | PPS19-0120 | Edward Reed | PPS19-0146 | William W Thomas | PPS19-0192 |
| Bert Lott | PPS19-0121 | Ernie Rice | PPS19-0147 | Vanessa Thompson | PPS19-0193 |
| Robert Manning | PPS19-0123 | Karen L Rice | PPS19-0148 | Christina Tiffany | PPS19-0194 |
| Roger Martucci | PPS19-0124 | Debra Rios | PPS19-0149 | Gabriel E Tranum | PPS19-0195 |
| William Lu Maye | PPS19-0122 | Randy Rober | PPS19-0150 | Jacob Tranum | PPS19-0196 |
| Michael J McMahon | PPS19-0125 | David M Roberts | PPS19-0336 | Paul G Turpen | PPS19-0197 |
| Jerry Melber | PPS19-0126 | Patricia Roberts | PPS19-0337 | Margarita Vasquez | PPS19-0198 |
| Arsalan Memon | PPS19-0127 | Richard Robex | PPS19-0151 | Robert E Vick, II | PPS19-0199 |
| Jenna Mendoza | PPS19-0128 | Jery Robinson | PPS19-0152 | Kasey Vink | PPS19-0200 |
| Matthew A Millhollin | PPS19-0129 | Antonio Roque | PPS19-0153 | Brad Votaw | PPS19-0201 |
| Vivian G Mitchell | PPS19-0130 | Ethel A Ross | PPS19-0154 | Ambiko Wallace | PPS19-0202 |
| Carlos A Moreno | PPS19-0131 | Richard C Ross | PPS19-0155 | Daniel R Ward | PPS19-0203 |
| Kelly Murski | PPS19-0132 | Edna Russell | PPS19-0156 | Vancem Warrem, Sr. | PPS19-0204 |
| Andrew Myers | PPS19-0263 | Mark Russell, Jr. | PPS19-0157 | Kaylan Welborn | PPS19-0205 |
| Frederick M Myers | PPS19-0264 | John T Sadler, Jr | PPS19-0167 | Gregory M Willing | PPS19-0206 |
| James G Myers | PPS19-0265 | Ligno Sanchez | PPS19-0168 | Deborah A Wilson | PPS19-0207 |
| Stephanie Myers | PPS19-0266 | Virginia L Saxon | PPS19-0169 | Elmer W Wilson | PPS19-0208 |
| Paul Nardizz | PPS19-0133 | Nathaniel Scott | PPS19-0170 | Mitch A Wirth | PPS19-0209 |
| Wendy Neff | PPS19-0134 | Joe Sherrod | PPS19-0171 | Deborah Woodhouse | PPS19-0210 |
| Jillian Newkirk | PPS19-0135 | Cory Shields | PPS19-0172 | Jerry Wooten | PPS19-0211 |
| Brian Newton | PPS19-0136 | Mark O Shiver | PPS19-0173 | Edwin E Young | PPS19-0212 |
| Jeremy L Nicholas | PPS19-0268 | Eric Shumate | PPS19-0174 | Sarah Zirakian | PPS19-0213 |
| Michael Noble | PPS19-0137 | Andrew Siteps | PPS19-0175 | | |
| Trinity Olson | PPS19-0138 | Jeremy S Small | PPS19-0176 | | |
| John Pappas | PPS19-0139 | Bryan Smith | PPS19-0177 | | |

as private process servers in the above-captioned matter.  In support of said motion, Plaintiff states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully submitted,

By: /s/ Scott A. Wissel
            Thomas M. Martin, MO #38811
            Scott A. Wissel, MO #49085
            LEWIS RICE LLC
            1010 Walnut, Suite 500
            Kansas City, Missouri 64106
            Telephone: (816) 421-2500
            Facsimile: (816) 472-2500
            tmmartin@lewisrricekc.com
            sawissel@lewisrricekc.com

            ATTORNEYS FOR PLAINTIFF

**ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER**

It is hereby ordered that Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____      _____
                                               Judge or Circuit Clerk

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
☒ AT KANSAS CITY ☐ AT INDEPENDENCE

**RE**: **CENTRAL COMMUNICATION V FENTON NISSAN ET AL**
**CASE NO:** **1916-CV03865**

**TO:** **SCOTT A WISSEL**
**LEWIS RICE & FINGERSH**
**1010 WALNUT #500**
**KANSAS CITY, MO 64106**

We have received pleadings, which you submitted for filing in the case and they have been file-stamped on <u>February 11, 2019</u>. However, your pleading cannot be processed further until the following action is taken:

**RULE 3.2 - STYLE**
☒ **Additional service instructions are needed.**
☐ Incorrect case number/filed in wrong county.
☐ Document is unreadable.

**RULE 4.2 (2)**
☐ Need Circuit Court Form 4

**RULE 5.6 – COLLECTIONS OF DEPOSIT**
☐ No fee, or incorrect fee, received; fee required is $_____.
☐ Insufficient Filing Fee; Please Remit $_____
☐ No signature on check/form 1695.
☐ No request to proceed in forma pauperis.
☐ No personal checks accepted.

**RULE 68.1**
☐ Need Circuit Court Form 17

**RULE 68.7 – VITAL STATISTICS REPORT**
☐ Need Certificate of dissolution of marriage form.

**RULE 74.14 SUPREME CT – FOREIGN JUDGMENT**
☐ Authentication of foreign judgment required.
☐ Affidavit pursuant to Supreme Court Rule 74.14

**RULE 54.12 SERVICE IN REM OR QUASI IN REM ACTIONS**
☐ Affidavit for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Order for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Notice for Service by Publication required pursuant to Supreme Court Rule 54.12c.
☐ Affidavit for Service by Certified/Registered Mail pursuant to Supreme Court Rule 54.12b.

☒ **OTHER:** **Before your case can be processed further you will need to eFile service instructions for the defendants. If service will be done by a private process server you will need to eFile a Motion and Order for Appointment of Private Process Server with the required PPS19 number(s) on it.**
☒ **Please take the actions necessary to comply with the Circuit Court Rules and your request will be processed.**
☐ The private process server listed is not on our approved list.
☐ Execution in effect. Return date _____. Request may be resubmitted within one week prior to return date.
☐ Supreme Court Rule 90.13 requires interrogatories be served with summons of garnishment.

<u>**If the filing was a new case, please be advised that unless the additional information marked is received within 30 days of the date of this notice this case will be dismissed pursuant to Rule 37.4 for failure to prosecute without prejudice, at the Plaintiff's cost. Collection efforts will be pursued for these costs.**</u>

**Please refer to the Court's website at www.16thcircuit.org for Court Rules or Forms.**

Copies electronic noticed, faxed, emailed and/or mailed FEBRUARY 14, 2019 to:

<div align="right">

COURT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

</div>

| | |
|---|---|
| **FEBRUARY 14, 2019** | **By** _Peggy Holley_ |
| **Date** | **Peggy Holley, 816-881-6491** |
| | **Deputy Court Administrator** |

☒ **415 East 12th St., Kansas City, Missouri 64106**
☐ **308 W. Kansas, Independence, Missouri 64050**

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
☒ **AT KANSAS CITY** ☐ **AT INDEPENDENCE**

CENTRAL COMMUNICATIONS CREDIT UNION,
_____
PETITIONER/PLAINTIFF,

VS.                                                CASE NO. _1916-cv03865_____

CU DIRECT CORPORATION, ET AL.
_____
RESPONDENT/DEFENDANT.

**MOTION FOR APPROVAL AND APPOINTMENT**
**OF PRIVATE PROCESS SERVER**

COMES NOW Requestor in the above captioned matter and for its Motion for Approval/ Appointment of a Private Process Server, pursuant to Local Rule 4.9 of the Jackson County Circuit Court Rules, states to the Court as follows:

The Requestor requests that the following individual be approved and appointed to serve process in this case:

Legal Name _____ Stephen Waters PPS19-0706; Cecil Landrum PPS190698 _____

The Requestor states that:
☒  The above-named individual is qualified to serve process in this matter and that an affidavit containing the information required by Rule 4.9 and attesting to such qualifications is attached and incorporated as Exhibit "A".
☐  The above-named individual is on the Court's List of Approved Process Servers and all of the information contained in his/her Application and Affidavit currently on file is still correct.
☐  The above-named individual is on the Court's List of Approved Process Servers and the information contained in his/her Application and Affidavit needs to be updated as indicated in an attachment, provided by me herewith.

_____/s/ Scott A. Wissel_____          Lewis Rice LLC
                                              1010 Walnut Street #500, Kansas City, MO 64106
                                              Scott A. Wissel
Signature of Requesting Party                 _____
                                              Printed Name of Requesting Party

**ORDER**

It is hereby ordered that Requestor's Motion for Approval and Appointment of a Private Process server is sustained and the above-named individual is hereby approved and appointed to serve process in the above captioned matter.

_____15-Feb-2019_____          _____
DATE                                          DEPUTY COURT ADMINISTRATOR

Revised Oct 2016

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**

| | |
|---|---|
| CENTRAL COMMUNICATIONS | ) |
| CREDIT UNION, | ) |
| Plaintiff, | ) |
| v. | ) Case No. ___1916-cv03865___ |
| | ) |
| FENTON NISSAN OF LEGENDS, LLC, | ) |
| et al., | ) |
| Defendants. | ) |

<u>**MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER**</u>

COMES NOW <u>Plaintiff</u>, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process Service & Investigations, Inc.:

| | | | | | |
|---|---|---|---|---|---|
| Jan Adams | PPS19-0001 | George L Castillo | PPS19-0037 | Bradley Gordon | PPS19-0059 |
| Michelle L Adams | PPS19-0002 | Sonja R Chailland | PPS19-0038 | Tom Gorgone | PPS19-0060 |
| Roger Adams | PPS19-0003 | Gary Chatham | PPS19-0039 | Gabriella Gourdin | PPS19-0061 |
| Bobby Ali | PPS19-0004 | Glen Cobb | PPS19-0040 | Christina M Gregory | PPS19-0062 |
| Lakeita Allen | PPS19-0005 | Kenneth V Condrey | PPS19-0041 | Charles R Gunning | PPS19-0063 |
| Sandra M Allen | PPS19-0006 | Sharon R Condrey | PPS19-0042 | Darnell Hamilton | PPS19-0076 |
| Victor Aponte | PPS19-0007 | Kathleen Cook | PPS19-0043 | Kimberly Hamilton | PPS19-0077 |
| Joshua Aragon | PPS19-0008 | William R Cooper | PPS19-0044 | Alan Hancock | PPS19-0078 |
| Brandon Aschenbrenner | PPS19-0009 | Catherine Cornellier | PPS19-0045 | Eric Hann | PPS19-0079 |
| Erica Austin | PPS19-0010 | Wilberto Correa | PPS19-0046 | Timothy S Hansen | PPS19-0080 |
| Kali A Baltazar | PPS19-0011 | Alterick S Davenport | PPS19-0047 | Christy Hartline | PPS19-0081 |
| Joseph L Baska | PPS19-0012 | Duane D Day | PPS19-0048 | Larry Haynes | PPS19-0082 |
| Carrington L Bell | PPS19-0013 | Gerald Deadwyler | PPS19-0049 | Douglas E Hays | PPS19-0083 |
| George Bell | PPS19-0014 | Robert E Delacy, III | PPS19-0050 | Grace Hazell | PPS19-0084 |
| Ryan Black | PPS19-0015 | Robert E Delacy, Jr. | PPS19-0051 | Richard P Heimerich, Jr. | PPS19-0085 |
| Shanna Blackwell | PPS19-0016 | Dominic DellaPorte | PPS19-0052 | Stephen Heitz | PPS19-0086 |
| Dianna J Blea | PPS19-0017 | Ricardo Delpratt | PPS19-0053 | Charles Helms | PPS19-0087 |
| Richard J Blea | PPS19-0018 | John Dippenworth | PPS19-0064 | Austen Hendrickson | PPS19-0088 |
| Robert Blixt | PPS19-0019 | Alexander C Djaine | PPS19-0065 | Wendy L Henrich | PPS19-0089 |
| Brent Bohnoff | PPS19-0020 | Claudia A Dohn | PPS19-0066 | Jesse J Hernandez | PPS19-0090 |
| David Braxton | PPS19-0021 | Dale Dorning | PPS19-0067 | Michael Hibler | PPS19-0091 |
| Charles Bridges | PPS19-0022 | Jadeena Earle | PPS19-0068 | Anthonio Hightower | PPS19-0092 |
| Donnie C Briley | PPS19-0023 | Abel A Emiru | PPS19-0069 | Wendy K Hilgenberg | PPS19-0238 |
| Kathy A Broom | PPS19-0024 | David S Felter | PPS19-0070 | James M Hise | PPS19-0093 |
| Dan Brouillete | PPS19-0025 | William F Ferrell | PPS19-0228 | Gary F Hodges | PPS19-0094 |
| Douglas S Brower | PPS19-0026 | Robert D Finley | PPS19-0071 | Brian K Hollen | PPS19-0095 |
| Kelley Brown | PPS19-0028 | Travis Foster | PPS19-0072 | Bob Holyk | PPS19-0096 |
| Kenneth H Brown, Jr. | PPS19-0027 | Christopher Fowler | PPS19-0073 | Roman Holyk | PPS19-0097 |
| Nicholas R Bull | PPS19-0029 | James Frago | PPS19-0074 | Ulonda G Howard | PPS19-0098 |
| Jarrett M Bullock | PPS19-0030 | John Frago | PPS19-0075 | Martin J Hueckel | PPS19-0099 |
| Ashley Bumgardner | PPS19-0031 | Andrew L Garza | PPS19-0231 | William B Humble | PPS19-0100 |
| James Burke | PPS19-0032 | Louis Gerrick | PPS19-0054 | George Illidge | PPS19-0101 |
| Randy D Burrow | PPS19-0033 | Matthew Gilmore | PPS19-0055 | Frank James | PPS19-0102 |
| Gary Burt | PPS19-0034 | Steven D Glenn | PPS19-0056 | Matthew J Jankowski | PPS19-0103 |
| William J Caputo | PPS19-0035 | Ronda Godard | PPS19-0057 | Betty A Johnson | PPS19-0104 |
| Charles Casey | PPS19-0036 | Adam Golden | PPS19-0058 | Christina M Johnson | PPS19-0105 |

| | | | | | |
|---|---|---|---|---|---|
| Edward Johnson | PPS19-0106 | Cynthia Paris | PPS19-0140 | Monica Smith | PPS19-0178 |
| Randy Johnson | PPS19-0107 | George R Perry, Jr. | PPS19-0142 | Timofey A Somoylenko | PPS19-0179 |
| Michael A Jones | PPS19-0108 | Janet R Perry | PPS19-0141 | Anthony Spada | PPS19-0180 |
| Haile Kahssa | PPS19-0109 | Kacie Phelps | PPS19-0143 | Melissa Spencer | PPS19-0181 |
| Kenneth J Kearney | PPS19-0110 | Vincent Piazza | PPS19-0158 | Jamie P Stallo | PPS19-0182 |
| Michael Keatina | PPS19-0111 | Timothy Pinney | PPS19-0159 | Marc A Starks | PPS19-0183 |
| Gerald Keeley | PPS19-0112 | Jason S Plumley | PPS19-0160 | Barbara J Stelc | PPS19-0184 |
| Wyman T Kroft | PPS19-0113 | Craig Podgurshi, Jr | PPS19-0161 | Kelvin Stinyard | PPS19-0185 |
| Jeff Kuenzi | PPS19-0114 | Rocellious D Pope | PPS19-0162 | Randy Stone | PPS19-0186 |
| Jo Ann Lane | PPS19-0115 | Anastasia Quinquit | PPS19-0163 | Haley Stratton | PPS19-0187 |
| John M Laukaitis | PPS19-0116 | Charles J Reardon | PPS19-0164 | Berham B Tassaw | PPS19-0188 |
| Joshua Lee | PPS19-0117 | Derek L Reddick | PPS19-0165 | Jeffrey Teitel | PPS19-0189 |
| Rick V Leeds | PPS19-0118 | Angela Reed | PPS19-0166 | Perry Thomas | PPS19-0190 |
| Kristie S Lewis | PPS19-0119 | Christopher Reed | PPS19-0145 | Robert H Thomas | PPS19-0191 |
| John D Lichtenegger | PPS19-0120 | Edward Reed | PPS19-0146 | William W Thomas | PPS19-0192 |
| Bert Lott | PPS19-0121 | Ernie Rice | PPS19-0147 | Vanessa Thompson | PPS19-0193 |
| Robert Manning | PPS19-0123 | Karen L Rice | PPS19-0148 | Christina Tiffany | PPS19-0194 |
| Roger Martucci | PPS19-0124 | Debra Rios | PPS19-0149 | Gabriel E Tranum | PPS19-0195 |
| William Lu Maye | PPS19-0122 | Randy Rober | PPS19-0150 | Jacob Tranum | PPS19-0196 |
| Michael J McMahon | PPS19-0125 | David M Roberts | PPS19-0336 | Paul G Turpen | PPS19-0197 |
| Jerry Melber | PPS19-0126 | Patricia Roberts | PPS19-0337 | Margarita Vasquez | PPS19-0198 |
| Arsalan Memon | PPS19-0127 | Richard Robex | PPS19-0151 | Robert E Vick, II | PPS19-0199 |
| Jenna Mendoza | PPS19-0128 | Jery Robinson | PPS19-0152 | Kasey Vink | PPS19-0200 |
| Matthew A Millhollin | PPS19-0129 | Antonio Roque | PPS19-0153 | Brad Votaw | PPS19-0201 |
| Vivian G Mitchell | PPS19-0130 | Ethel A Ross | PPS19-0154 | Ambiko Wallace | PPS19-0202 |
| Carlos A Moreno | PPS19-0131 | Richard C Ross | PPS19-0155 | Daniel R Ward | PPS19-0203 |
| Kelly Murski | PPS19-0132 | Edna Russell | PPS19-0156 | Vancem Warrem, Sr. | PPS19-0204 |
| Andrew Myers | PPS19-0263 | Mark Russell, Jr. | PPS19-0157 | Kaylan Welborn | PPS19-0205 |
| Frederick M Myers | PPS19-0264 | John T Sadler, Jr | PPS19-0167 | Gregory M Willing | PPS19-0206 |
| James G Myers | PPS19-0265 | Ligno Sanchez | PPS19-0168 | Deborah A Wilson | PPS19-0207 |
| Stephanie Myers | PPS19-0266 | Virginia L Saxon | PPS19-0169 | Elmer W Wilson | PPS19-0208 |
| Paul Nardizz | PPS19-0133 | Nathaniel Scott | PPS19-0170 | Mitch A Wirth | PPS19-0209 |
| Wendy Neff | PPS19-0134 | Joe Sherrod | PPS19-0171 | Deborah Woodhouse | PPS19-0210 |
| Jillian Newkirk | PPS19-0135 | Cory Shields | PPS19-0172 | Jerry Wooten | PPS19-0211 |
| Brian Newton | PPS19-0136 | Mark O Shiver | PPS19-0173 | Edwin E Young | PPS19-0212 |
| Jeremy L Nicholas | PPS19-0268 | Eric Shumate | PPS19-0174 | Sarah Zirakian | PPS19-0213 |
| Michael Noble | PPS19-0137 | Andrew Siteps | PPS19-0175 | | |
| Trinity Olson | PPS19-0138 | Jeremy S Small | PPS19-0176 | | |
| John Pappas | PPS19-0139 | Bryan Smith | PPS19-0177 | | |

as private process servers in the above-captioned matter. In support of said motion, Plaintiff states that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Respectfully submitted,

By: /s/ Scott A. Wissel
           Thomas M. Martin, MO #38811
           Scott A. Wissel, MO #49085
           LEWIS RICE LLC
           1010 Walnut, Suite 500
           Kansas City, Missouri 64106
           Telephone: (816) 421-2500
           Facsimile: (816) 472-2500
           tmmartin@lewisrricekc.com
           sawissel@lewisrricekc.com

           ATTORNEYS FOR PLAINTIFF

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiff's Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE:     15-Feb-2019

                            DEPUTY COURT ADMINISTRATOR



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION | Plaintiff's/Petitioner's Attorney/Address:<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO 64106 |
| vs. | |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: **FENTON MOTORS GROUP, INC.**
**Alias:**

R/A JOHN D. ROBERTSON
HARTZOG CONGER CASON & NEVILLE
201 ROBERT S. KERR AVE, #1600
OKLAHOMA CITY, OK 73102

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

15-FEB-2019
Date _____
Clerk

Further Information: _____

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____.

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)
I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
*(Seal)* ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| **Service Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

**See the following page for directions to clerk and to officer making return on service of summons.**

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (8/2018) SM60 (JAKSMOS) *For Court Use Only:* **Document ID# 19-SMOS-200**   2   of   2            **(1916-CY03865)**      Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 62 of 75

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number:  1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO  64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO  64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  **BRAD FENTON**
**Alias:**
**FENTON MOTORS GROUP, INC.**
**ONE COWBOY WAY, SUITE 575**
**FRISCO, TX  75034**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*JACKSON COUNTY*

15-FEB-2019
_____
Date

_____
Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).

☐ other (describe) _____.

Served at _____ (address)

in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                     Signature of Sheriff or Server

**Subscribed and Sworn To** me before this _____ (day) _____ (month) _____ (year)

I am: (check one)    ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons.
     (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees, if applicable**

| Summons | $_____ |
|---|---|
| Non Est | $_____ |
| Mileage | $_____  (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

***See the following page for directions to clerk and to officer making return on service of summons.***

OSCA (8/2018) SM60 (JAKSMOS) *For Court Use Only:* **Document ID# 19-SMOS-201**  1  of  2      **(1916-CV03865)**          Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 64 of 75

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent.  If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body.  Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States.  If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths.  This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court.  The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (8/2018) SM60 (JAKSMOS) *For Court Use Only:* **Document ID# 19-SMOS-201** 2 of 2  **(1916-CY03865)** Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 65 of 75

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>CHARLES H MCKENZIE | **Case Number: 1916-CV03865** |
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION | Plaintiff's/Petitioner's Attorney/Address<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>**vs.** KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** FENTON NISSAN OF LEGENDS, LLC
Alias:

R/A THE CORP COMPANY INC.
112 SW 7TH STREET, SUITE 3C
TOPEKA, KS 66603

# PRIVATE PROCESS SERVER

*COURT SEAL OF*



*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>15-FEB-2019</u>
Date

_____
Clerk

Further Information:

---

**Sheriff's or Server's Return**

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____

_____
Date

_____
Notary Public

---

| **Sheriff's Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 19-SMCC-1729** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:19-cv-00220-FJG Document 1-1 Filed 03/21/19 Page 67 of 75

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

Service Information - Attorney



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

<div align="center">

## Summons in Civil Case

</div>

| | |
|---|---|
| **The State of Missouri to:** CU DIRECT CORPORATION<br>**Alias:**<br>R/A CSC-LAWYERS INC SERVICE CO<br>**221 BOLIVAR STREET**<br>**JEFFERSON CITY, MO 65101** | # PRIVATE PROCESS SERVER |

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

<u>15-FEB-2019</u>
Date

_____ Clerk

Further Information:

<div align="center">

**Sheriff's or Server's Return**

</div>

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with
_____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
_____ (name) _____ (title).

☐ other _____ .

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____      _____
<div align="center">Printed Name of Sheriff or Server          Signature of Sheriff or Server</div>

<div align="center">**Must be sworn before a notary public if not served by an authorized officer:**</div>

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____      _____
<div align="center">Date          Notary Public</div>

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ | 10.00 |
| Mileage | $ _____ ( _____ miles @ $._____ per mile) | |
| **Total** | $ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 19-SMCC-1730** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 69 of 75

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **CU DIRECT CORPORATION**
**Alias:**

R/A CSC-LAWYERS INC SERVICE CO
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

**PRIVATE PROCESS SERVER**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

15-FEB-2019
Date _____ Clerk

*JACKSON COUNTY*

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
Shelly Lewis (name) Corporate Rep for CSC-Lawyers (title).

☐ other

Served at 221 Bolivar St. Suite 106, Jefferson City (address)
in Cole (County/City of St. Louis), MO, on 2-21-2020 (date) at 9:37 AM (time).

Stephen R. Waters _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on Feb 19 2019 (date).

*(Seal)*

My commission expires: 2-21-2020 _____
Date                                Notary Public

### Sheriff's Fees

| | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ | ( _____ miles @ $ _____ per mile) |
| **Total** | $ _____ | |

CECILE R. LANDRUM
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 16676146
My Commission Expires February 21, 2020

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 19-SMCC-1730** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of Jackson**                    **Circuit Court**

Case Number: 1916-CV03865

Plaintiff/Petitioner:
**CENTRAL COMMUNICATIONS CREDIT UNION**

vs.

Defendant/Respondent:
**FENTON NISSAN OF LEGENDS, LLC**

Received by HPS Process Service & Investigations to be served on **Fenton Nissan of Legends, LLC The Corporation Company, Inc, Registered Agent, 112 Southwest 7th Street, Suite 3C, Topeka, KS 66603**.

I, ARIEL WILSON, being duly sworn, depose and say that on the **21st day of February, 2019** at **3:06 pm**, I:

Served the within named with a true copy of the **Motion for Appointment of Private Process Server; Order for Appointment of Private Process Server; Notice of Case Management Conference for Civil Case and Order for Mediation; Summons in Civil Case; Petition; and Exhibits 1-3** by leaving with Denise Rookstool, Office Manager at **112 Southwest 7th Street, Suite 3C, Topeka, KS 66603**.

I am over the age of eighteen, and have no interest in the above action.


ARIEL WILSON
Process Server

**HPS Process Service & Investigations**
**www.hpsprocess.com**
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**

Subscribed and Sworn to before me on the 26 day of _Feb_, 19 by the affiant who is personally known to me.

NOTARY PUBLIC

Elmer William Wilson
NOTARY PUBLIC~STATE OF KANSAS
MY APPT EXP: Dec 8 2021

Our Job Serial Number: HAT-2019002689

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0h

Electronically Filed - Jackson - Kansas City - March 15, 2019 - 04:52 PM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT UNION<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** FENTON NISSAN OF LEGENDS, LLC
Alias:

**R/A THE CORP COMPANY INC.**
**112 SW 7TH STREET, SUITE 3C**
**TOPEKA, KS 66603**

# PRIVATE PROCESS SERVER



*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

15-FEB-2019
Date

_____ Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
Date          Notary Public

| **Sheriff's Fees** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 19-SMCC-1729** 1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:19-cv-00220-FJG   Document 1-1   Filed 03/21/19   Page 73 of 75

Electronically Filed - Jackson - Kansas City - March 15, 2019 - 04:52 PM



IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>CHARLES H MCKENZIE | Case Number: 1916-CV03865 |
|---|---|
| Plaintiff/Petitioner:<br>CENTRAL COMMUNICATIONS CREDIT<br>UNION<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>SCOTT A WISSEL<br>LEWIS RICE & FINGERSH<br>1010 WALNUT #500<br>KANSAS CITY, MO 64106 |
| Defendant/Respondent:<br>FENTON NISSAN OF LEGENDS, LLC | Court Address:<br>415 E 12th<br>KANSAS CITY, MO 64106 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** CU DIRECT CORPORATION

**Alias:**

R/A CSC-LAWYERS INC SERVICE CO
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

**PRIVATE PROCESS SERVER**

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

JACKSON COUNTY

_15-FEB-2019_
Date

_____
Clerk

Further Information:

---

### AMENDED Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _221 Bolivar St. Suite 106 Jefferson City_ (address)

in _Cole_ (County/City of St. Louis), MO, on _Feb. 19 2019_ (date) at _9:37 AM_ (time).

_Stephen R. Waters_                        _Stephen R Waters_
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*  Subscribed and sworn to before me on _Feb. 26, 2019_ (date)

My commission expires _2-21-2020_          _____
Date                                        Notary Public

---

| Sheriff's Fees | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | CECILE R. LANDRUM<br>Notary Public, Notary Seal<br>State of Missouri<br>Cole County<br>Commission # 16676146<br>My Commission Expires February 21, 2020 |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ (_____ miles @ $._____ per mile) | |
| Total | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7/2018) SM30 (JAKSMCC) *For Court Use Only:* **Document Id # 19-SMCC-1730**  1 of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,

54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

AMENDED RETURN

Electronically Filed - Jackson - Kansas City - March 15, 2019 - 04:52 PM



Oklahoma County
SHERIFF

OKLAHOMA COUNTY

201 N. Shartel
Oklahoma City, OK 73102
405.713.1000 • 405.713.1908 fax
www.oklahomacounty.org/sheriff

# SHERIFF'S RETURN

STATE OF OKLAHOMA
}
OKLAHOMA COUNTY

CIVIL CASE NUMBER: _1916 - CV03865_

Received:

Affidavit_____ Citation _____ Complaint _____ Execution _____ Motion _____ Decree_____

Notice _____ Order _____ Petition __✓__ Summons __✓__ Subpoena _____ Waiver _____ Judgement _____

Writ _____ Replevin _____ Child Pick Up Order_____ Entry & Waiver _____ Declaration _____

Exit Order _____ OTHER: _____

Types of Service:

Personal Service _____ Residential _____ Corp Service __✓__ No Service _____ Recalled _____

Seized Property _____ Detained Person _____ Posted _____ Executed _____ Bad Address _____

I received this Writ this ___20___ day of ___FEB___, 2019 at this time _1038 A_ and executed the
same on the ___20___ day of ___FEB.___, 2019 at this time _120 P_ by serving: _____
_____FENTON MOTORS GROUP INC._____
_Served via Service Agent John D. Robertson's Admin. Assist. APRIL GARCIA_
Address: _201 Robert S Kerr Ave #1600_
_____(Hartzog Conger Cason & Neville)_____

P.D. TAYLOR, SHERIFF
Sheriff No. 450.00

Subscribed and Sworn to, before me this
___20___ Day of ___FEB___, 2019
My Commission expires: _4.8.21_

By: _____
Sgt. Renne' Gunn #107

La Fawnda K. Sharry
NOTARY PUBLIC, STATE OF OKLAHOMA

[Notary seal: LA FAWNDA K. SHARRY, NOTARY, # 13003278, EXP. 04/08/21, STATE OF OKLAHOMA, PUBLIC]